41 F.3d 527
 1995 A.M.C. 305
 Vika L. HOWARD, individually and as Personal Representative
of the Estate of Kenneth James Howard, Deceased,
Plaintiff-Appellant,
and
Rolf Howard, Plaintiff,
v.
CRYSTAL CRUISES, INC., a California corporation, Defendant-Appellee.
 No. 93-15489.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1994.
Decided Dec. 1, 1994.
 
 Allan S. Haley, Nevada City, CA, for plaintiff-appellant.
 Walter T. Johnson, Lillick & Charles, San Francisco, CA, for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before: LEAVY and KLEINFELD, Circuit Judges, and VAN SICKLE,* District Judge.
 LEAVY, Circuit Judge:
 
 
 1
 This appeal arises out of an admiralty wrongful death action in which a widow appeals from the district court's entry of judgment in her favor, arguing that the court erred by applying a federal statute rather than general maritime law to her claim, and by miscalculating the economic impact to her of her husband's death. We reject these contentions and affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 In September 1990, Kenneth James Howard ("Howard"), his wife, Vika, and their son, Rolf, took a Mexican vacation cruise aboard the CRYSTAL HARMONY, a vessel of Bahamian registry operated by Crystal Cruises, Inc. ("Crystal"), a California corporation. While disembarking from the CRYSTAL HARMONY as it lay anchored within Mexican territorial waters, Howard suffered a severe laceration to his right Achilles tendon. He received emergency medical attention aboard the CRYSTAL HARMONY and underwent surgery in Acapulco to repair the damaged tendon. Less than a month after returning home to Sacramento, Howard suddenly fell ill and died. An autopsy revealed that blood clots from the injured area had lodged in his pulmonary arteries and fatally obstructed the flow of blood to his lungs.
 
 
 3
 Seven months later, Mrs. Howard filed the instant wrongful death action in federal district court against Crystal, asserting individual claims on behalf of herself, her son, and her mother-in-law, as well as claims on behalf of Howard's estate, under the general maritime law of the United States and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. App. Secs. 761-67. Following a bench trial, the district court found in favor of the plaintiffs and awarded them damages totalling $373,379 plus prejudgment interest. Both parties then filed timely motions to alter or amend the judgment under Fed.R.Civ.P. 59(e). The court granted the motions and entered an amended judgment, again in favor of the plaintiffs, for $378,794 plus postjudgment interest. Mrs. Howard (hereafter, "appellant") has timely appealed from the amended judgment, arguing that the district court erred by applying DOHSA rather than the general maritime law, and by reducing the damages for lost income and services by 30% to reflect Howard's personal consumption.
 
 ANALYSIS
 I. DOHSA/General Maritime Law
 
 4
 The district court concluded that the provisions of DOHSA governed this action. That determination involves a question of law subject to de novo review. See Havens v. F/T Polar Mist, 996 F.2d 215, 217 (9th Cir.1993) (all legal conclusions of district court sitting in admiralty examined de novo).
 
 Section 1 of DOHSA provides that
 
 5
 [w]henever the death of a person shall be caused by wrongful act ... occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty....
 
 
 6
 46 U.S.C. Sec. 761.
 
 
 7
 It is undisputed that Howard died as the result of a wrongful act that occurred "beyond a marine league [i.e., three nautical miles] from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States[.]" See id. Accordingly, and in order to determine whether the district court correctly applied DOHSA as the exclusive remedy in this wrongful death action, see Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 232-33, 106 S.Ct. 2485, 2499-2500, 91 L.Ed.2d 174 (1986), we must answer the question of whether something that happens within the territorial waters of a foreign state occurs on the "high seas" for purposes of DOHSA.
 
 
 8
 We are aware of only two reported decisions from this Circuit that have touched on the question of the meaning of "high seas" under DOHSA. In Roberts v. United States, 498 F.2d 520 (9th Cir.), cert. denied, 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974), we indicated, without deciding, that DOHSA's "high seas" could be read as applying to foreign territorial waters. See id at 527 n. 7 ("Because Congress only has power to fix the extent of territorial waters measured from the shores of its own country it may well have considered all waters beyond one marine league from those shores to be 'high seas' for purposes of DOHSA so long as navigable, even though within the territorial waters of a foreign state."). Nine years later we again discussed, but did not decide, the issue in Williams v. United States, 711 F.2d 893, 895 n. 3 (9th Cir.1983) ("It is not clear whether such tortious acts [i.e., those occurring within the territorial waters of foreign states] fall within the purview of the DOHSA.") (citing Roberts).
 
 
 9
 While it is true that we have not previously disposed of this precise question, the clear weight of authority rejects the appellant's position. See, e.g., 2 Ellen M. Flynn, et al., Benedict on Admiralty Sec. 81c, at 7-11 n. 20 (7th ed. 1993) ("It appears to be settled that the term 'High Seas' within the meaning of DOHSA is not limited to international waters, but includes the territorial waters of a foreign nation as long as they are more than a marine league away from any United States shore."); Thomas J. Schoenbaum, Admiralty and Maritime Law Sec. 7-2, at 238 (1987) (DOHSA applies "even [to] those killed in foreign territorial waters.") (footnote omitted). Accord Sanchez v. Loffland Bros., 626 F.2d 1228, 1230 & n. 4 (5th Cir.1980) (per curiam) (seaman killed in Venezuela), cert. denied, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981); Public Admin'r of New York County v. Angela Compania Naviera, S.A., 592 F.2d 58, 60-61 (2d Cir.) (Greek seaman from Liberian-Panamanian ship died in Greece after sailing in Indian, Pakistani, and Japanese waters), cert. denied, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979); Jennings v. Boeing Co., 660 F.Supp. 796, 803-804 & n. 9 (E.D.Pa.) (helicopter crash in Scottish waters), as modified on reh'g, 677 F.Supp. 803 (1987), aff'd, 838 F.2d 1206 (3d Cir.1988); Kuntz v. Windjammer "Barefoot" Cruises, Ltd., 573 F.Supp. 1277, 1280 (W.D.Pa.1983) (scuba diving accident in Bahamian waters), aff'd, 738 F.2d 423 (3d Cir.), cert. denied, 469 U.S. 858, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984); First & Merchants Nat'l Bank v. Adams, 1979 A.M.C. 2860, 2863-64 (E.D.Va.1979) (plane crash in Canadian waters), aff'd in part, rev'd in part on other grounds, 644 F.2d 878 (4th Cir.1981); Kunreuther v. Outboard Marine Corp., 757 F.Supp. 633, 634 (E.D.Pa.1991) (snorkeling accident in Jamaican waters); Moyer v. Klosters Rederi, 645 F.Supp. 620, 623-24 (S.D.Fla.1986) (cruise ship passenger died after snorkeling in Mexican waters); In re Air Crash Disaster Near Bombay, 531 F.Supp. 1175, 1182-84 (W.D.Wash.1982) (plane crash in Indian waters); Cormier v. Williams/Sedco/Horn Constructors, 460 F.Supp. 1010, 1011-12 (E.D.La.1978) (seaman drowned in Peruvian river); Mancuso v. Kimex, Inc., 484 F.Supp. 453, 454-55 (S.D.Fla.1980) (plane crash in Jamaican waters); Hamill v. Olympic Airways, S.A., 398 F.Supp. 829, 834 (D.D.C.1975) (plane crash in Greek waters) (implicit in dictum).
 
 
 10
 Applying the above authorities to the facts of this case, we conclude that there is nothing inherently absurd with the notion of an American court applying American law to an action filed by an American plaintiff against an American defendant, particularly when the law in question was expressly designed to cover wrongful deaths occurring outside the territorial boundaries of the United States. Accordingly, we hold that the district court did not err by applying DOHSA as the exclusive remedy here.[1] See Offshore Logistics, Inc. v. Tallentire, 477 U.S. at 232-33, 106 S.Ct. at 2499-2500.
 
 II. 30% Reduction of Damages
 
 11
 After calculating the total amount of damages to be awarded the appellant for her loss of Howard's support and services, the district court reduced those figures by 30% to reflect that portion of the recovery which the court found should be attributed to Howard's personal consumption. The appellant asserts two challenges to the district court's calculations: First, she argues that it was error to apply the 30% figure to the household income (i.e., both her salary and Howard's wages as a grocery clerk) rather than to Howard's income alone, because Howard was unusually frugal, and including her income violates the collateral source rule; and second, she argues that no reduction should have been taken against the valuation of Howard's services, because those services (e.g., painting the house and maintaining the car) were indivisible. We review the district court's computation of damages following a bench trial for clear error. See Tonry v. Security Experts, Inc., 20 F.3d 967, 970 (9th Cir.1994). Whether the district court selected the correct legal standard for computing those damages, however, is a question of law subject to de novo review. Id. at 972.
 
 
 12
 Section 2 of DOHSA provides that damages must represent "a fair and just compensation for the pecuniary loss sustained[.]" 46 U.S.C. Sec. 762. Accord 1 Martin J. Norris, The Law of Maritime Personal Injuries Sec. 6:5, at 320 (4th ed. 1990) ("Under the Death on the High Seas Act [a widow] is entitled to a fair and just compensation for the pecuniary loss she has suffered by the reason of the death of the decedent.") (footnote omitted). As a practical matter, these damages are limited to two things: loss of support and loss of services. See 2 Martin J. Norris, The Law of Seamen Sec. 29:1, at 307 (4th ed. 1985).
 
 
 13
 The appellant's own economic expert expressed the concept of "personal consumption" in terms of a percentage of total household income, and relied on a chart (the so-called "Cheit Table") which showed that the average head of household in a two-person/two-income household consumes 30% of the total household income. The district court found that the appellant's testimony concerning Howard's unusual frugality was unsupported by the evidence.[2] We find no clear error in this holding, both as to loss of income and loss of personal services.
 
 
 14
 As for the argument concerning the collateral source rule, the appellant cites to no relevant authority for the proposition that her own income should not be taken into consideration as a portion of the total household income. Indeed, the clear weight of authority indicates that alternative means of support available to an adult beneficiary (exclusive of remarriage and, perhaps, insurance) in a DOHSA action may be taken into consideration by a court. See, e.g., Joseph E. Edwards, Annotation, "Determination of Amount of Award of Damages Under Death on the High Seas Act (46 USCS Secs. 761-768)," 16 A.L.R.Fed. 679, 725-26 (1973 & Supp.1993) and authorities collected thereat.
 
 CONCLUSION
 
 15
 We conclude that the district court did not err in its determination that DOHSA provides the exclusive remedy for the appellant's wrongful death action, and we reject the appellant's contention that the district court erred by reducing her lost income and services damages by 30% to reflect Howard's personal consumption. Because we find no merit to any of the appellant's remaining arguments, the decision of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 The Honorable Fred Van Sickle, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 Citing Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), Crystal contends that the general maritime law of the United States would not make a difference in the outcome of this appeal, even if we were to hold that DOHSA does not govern this action. While support exists for this position, see, e.g., Thomas J. Schoenbaum, Admiralty and Maritime Law Secs. 5-7 at 53, 7-3 at 91 (Supp.1992) and cases collected thereat, we decline to reach the merits of this argument in the light of our holding
 
 
 [2]
 For example, the district court pointed out that, whatever economies Howard may have taken in some matters, he and his wife used both incomes in order to take expensive vacations, as exemplified by the Mexican cruise that cost him his life