**Richard J. JACOBSON, Sr., individually and as Personal Representative of Jodi Jacobson, deceased, for the benefit of Janice Jacobson and Richard Jacobson, Jr., Plaintiff,**

v.

**KALAMA SERVICES; Boston Whaler; Teleflex Marine, Inc. and Teleflex, Inc., Defendants.**

**Teleflex Marine, Inc. and Teleflex, Inc., Third–Party Plaintiffs,**

v.

**United States of America, Third–Party Defendant.**

**No. CIV. 98–00761 HG.**

United States District Court, D. Hawai'i.

July 26, 2000.

---

Howard G. McPherson, Honolulu, for Plaintiffs.

Robert G. Frame, Michael J. Nakano, Alcantara, Frame & Formby, Honolulu, for Defendant Kalama Services.

Kenneth K. Fukunaga, Lois H. Yamaguchi, Fukunaga, Matayoshi, Hershey & Ching, Honolulu, Alex B. Marconi, Patrick X. Fowler (admitted pro hac vice), Snell & Wilmer, LLP, Phoenix, AZ, for Defendant Boston Whaler.

Margaret Jenkins Leong, Kathleen A. Kelly, Mavis M. Masaki, Goodsill, Anderson, Quinn & Stifel, Honolulu, for Defendants Teleflex Marine, Inc. and Teleflex, Inc.

Robert P. Morean, Office of the United States Attorney, Honolulu, for USA.

## ORDER GRANTING DEFENDANT TELEFLEX'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

GILLMOR, District Judge.

On March 31, 2000, Plaintiff and Defendants Teleflex Marine, Inc. and Teleflex, Inc. (collectively, "Defendant" or "Teleflex") submitted cross motions for partial summary judgment on the issue of damages. The parties seek clarification as to what substantive law applies to Plaintiff's wrongful death action following the disappearance of his daughter two miles off of Johnston Island, a United States Territory.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's daughter, Jodi Jacobson, an employee of Defendant Kalama Services, disappeared while investigating the status of overdue scuba divers off Johnston Atoll. After confirming the scuba divers were safe, Ms. Jacobson began her return to the marina. Scuba divers discovered Ms. Jacobson's boat unattended and circling out of control two miles off the coast of the atoll. An exhaustive search and rescue mission failed to locate Ms. Jacobson.

Investigations conducted by Defendant Kalama Services and the United States Air Force Office of Special Investigations determined that a broken steering cable caused the boat to lock in a circling pattern. Teleflex is a manufacturer of boat steering cables.

On September 17, 1998, Plaintiff filed a Complaint for Damages For Wrongful Death Under the Jones Act and the General Maritime Law (the "Complaint"). This Complaint was amended on July 29, 1999 to include a claim of product liability against Defendant Teleflex.

On March 31, 2000, the parties submitted separate motions for partial summary judgment. Defendant argues that the Territories and Insular Possessions Act requires the application of the Death on the High Seas Act (DOHSA) to Plaintiff's claims, which would limit Plaintiff's recovery to pecuniary damages. Plaintiff argues that the applicable law is the general maritime law established by the Supreme Court in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). *Moragne* recognized claims for wrongful death within the territorial waters of the United States and permits recovery of pecuniary and non-pecuniary damages.

On April 27, 2000, the parties opposed the respective separate motions for partial summary judgment. Each party argued the interpretation of the law propounded in their respective original motions. On May 4, 2000, each party filed their reply to the other party's opposition to their respective motions.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file [in the case] that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

### ANALYSIS

The parties do not dispute that Plaintiff has a right of action for the wrongful death of his daughter. They only dispute the source of that right of action. Plaintiff believes the right to arise under the Supreme Court Case of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Defendant asserts the right to arise under the Death on the High Seas Act. The difference between these two sources, and the crux of the issue here, is what damages are available to Plaintiff. The DOHSA limits damages for wrongful death to pecuniary losses. *See* 46 U.S.C. § 762. The *Moragne* decision allows pecuniary and non-pecuniary damages.

The Territories and Insular Possessions Act, 48 U.S.C. § 644a ("TIPA") is the source of the substantive law on Johnston Island. The statute reads in relevant part:

> All civil acts and deeds consummated and taking place on [Johnston Atoll] or in the waters adjacent thereto, and all offenses or crimes committed thereon, or on or in the waters adjacent thereto, *shall be deemed to have been consummated or committed on the high seas on board a merchant vessel or other vessel belonging to the United States* and shall be adjudicated and determined or adjudged and punished according to the laws of the United States relating to such civil acts or offenses on such ships or vessels on the high seas, which laws for the purpose aforesaid are extended over such islands, rocks, and keys.

*See* 48 U.S.C. § 644a (emphasis added).

TIPA's language requiring that acts committed on Johnston Atoll be "deemed

to have been consummated or committed on the high seas" requires a court to entertain the fiction that Johnston Island is, essentially, a vessel on the high seas. Where that "vessel" is physically located on the seas, however, affects which wrongful death law will apply. If the fiction required to be entertained by the courts results in a finding that the "vessel" is within territorial waters, *Moragne* applies. Moragne will not apply, however, if the DOHSA applies. DOHSA will apply if the "vessel" is both (a) on the high seas and (b) beyond a marine league from any territory of the United States. *See* 46 U.S.C. § 761 (emphasis added):

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring *on the high seas beyond a marine league* from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages ...

Since TIPA requires courts to assume the "vessel" is on the high seas, the only question is whether the "vessel" can be on the high seas at the same time as it is within a marine league of the territory of the United States, so as to preclude the application of DOHSA. If a "vessel" is on the high seas yet within a marine league of a territory of the United States, presumably DOHSA would not apply by its own terms. Yet, if the "high seas," by definition, precludes all waters within a marine league of a territory of the United States, then the fiction of TIPA would require a court to assume the "vessel" is beyond a marine league from any territory of the United States and to apply DOHSA to any wrongful death actions.[1]

The essential issue of the parties' motions is what the term "high seas" means, as that term is used in TIPA. Plaintiff argues the term should be interpreted as meaning all the waters in the ocean. Defendant suggests the term should be interpreted under its modern understanding which would include only those waters beyond territorial waters. The practical effect of the different interpretations is whether the Death on the High Seas Act will apply.

## I. "High Seas" Defined

The definition of "high seas" has not been static over time. In the Nineteenth Century, one definition of "high seas" included all waters, even those adjacent to the shoreline. *See Ross v. McIntyre*, 140 U.S. 453, 471, 11 S.Ct. 897, 35 L.Ed. 581 (1891) ("The term 'high seas' includes waters on the sea-coast without the boundaries of low-water mark."), *United States v. Rodgers*, 150 U.S. 249, 253–55, 14 S.Ct. 109, 37 L.Ed. 1071 (1893), *United States v. Bevans*, 3 Wheat. 336, 16 U.S. 336, 341, 4 L.Ed. 404 (1818), *The Manila Prize Cases*, 188 U.S. 254, 271, 23 S.Ct. 415, 47 L.Ed. 463 (1903). By the latter part of the Twentieth Century, "high seas" included only those seas beyond territorial waters. *See United States v. Louisiana*, 394 U.S. 11, 22–23, 89 S.Ct. 773, 22 L.Ed.2d 44 (1969); *see also* 1 Schoenbaum, Admiralty and Maritime Law, 2nd Ed. § 2–18 (1994). Territorial waters were initially understood to be waters within three miles from the shoreline, *see Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 123, 43 S.Ct. 504, 67 L.Ed. 894 (1923), *Louisiana*, 394 U.S. at 22–23, 89 S.Ct. 773, and, later, within twelve miles. *See In re: Air Crash Off Long Island*, 209 F.3d 200 (2nd Cir.2000) (hereinafter "*TWA Crash Case*").

By the time of the passage of TIPA in 1950 (and even at the time of the passage of DOHSA in 1920) the term "high seas" clearly meant those waters beyond the ter-

---

1. The Court is not unmindful that TIPA's mandate that courts apply the substantive law that would apply had the acts occurred on a ship on the high seas may have an uncomfortable fit outside of traditional admiralty claims. The Court does not address the applicability of section 644a to causes of action that are foreign to maritime cases since Plaintiff's wrongful death claim is regularly addressed by federal courts sitting in admiralty.

ritorial waters of any nation or state. *See Cunard S.S. Co.*, 262 U.S. at 123, *The Scotland*, 105 U.S. 24, 29, 26 L.Ed. 1001 (1881), *Civil Aeronautics Board v. Island Airlines, Inc.*, 235 F.Supp. 990, 1003 (D.Haw.1964) ("Seaward of the inland waters is the marginal sea, also called the territorial sea and the 3–mile limit .... Seaward of the territorial waters lie the high seas ..."); *TWA Crash Case*, 209 F.3d at 205 ("[N]o ... authority [after 1920] supports [the] definition of 'high seas' as 'beyond the low-water mark'."); *see also* Report of the International Law Commission to the General Assembly of the United Nations, Document A/3159, Yearbook of the International Law Commission 1956, Vol. II, p. 259, Article 26 (defining "high seas" as "all parts of the sea that are not included in the territorial sea ..."), Convention on the High Seas, 13 U.S.T. 2313, 2314, Art. I ("The term 'high seas' means all parts of the sea that are not included in the territorial sea or in the internal waters of a State.") (Apr. 29, 1958). During the first half of the Twentieth Century, territorial waters included those waters within three miles of the low-water mark of the coastline. *See Cunard S.S. Co.*, 262 U.S. at 123, 43 S.Ct. 504, *Civil Aeronautics Board*, 235 F.Supp. at 1003. Since that time, the definition of territorial waters has expanded to twelve miles. *See* Presidential Proclamation 5928 (December 27, 1988) (extending U.S. territorial waters to 12 nautical miles) (relying on 1982 Convention on the Law of the Sea).

■ The Second Circuit has recently given full consideration to the definition of "high seas" as that term is used in DOHSA and has concluded that "territorial waters" and "high seas" have been defined in relation to one another since the early part of the Twentieth Century. High seas begin where territorial waters end. *See TWA Crash Case*, 209 F.3d at 210–11. In the *TWA Crash Case*, the Second Circuit held that the DOHSA did not apply to wrongful death actions brought when an airline crashed 8 miles from the shore of New York. The court explained that, before DOHSA would apply, the alleged wrongful death must occur both beyond a marine league and on the high seas. The court found that the crash occurred beyond three miles, thus satisfying the requirement of DOHSA that the act occur beyond a marine league.[2] Because the crash occurred only 8 miles beyond the shore, however, it did not occur on the high seas. Had the crash occurred beyond 12 miles, the territorial waters endpoint at the time of the crash, DOHSA would have applied. *See id.*

■ Since the time of *Cunard S.S. Co.* through the decision of the *TWA Crash Case* of this year, the clear meaning of "high seas" are those waters beyond the territorial waters. The definition of "high seas" must be employed in interpreting that term in TIPA. TIPA requires the court to entertain the fiction that the substantive law applying to acts committed on Johnston Island will be the law that would have applied had the acts been committed on the high seas. Under the definition of "high seas" since *Cunard S.S. Co.*, this means the acts leading to the alleged wrongful death of Plaintiff's daughter must be deemed to have been committed beyond territorial waters. At the time TIPA was passed, territorial waters were understood to be three miles from the low water mark of the coastline. *See Cunard S.S. Co.*, 262 U.S. at 123, 43 S.Ct. 504, *Civil Aeronautics Board*, 235 F.Supp. at 1003. Therefore, TIPA requires the court to assume that Plaintiff's daughter's death occurred beyond three miles from Johnston Island.[3]

---

2. A marine league, as the term is used in DOHSA, is three nautical miles. *See Howard v. Crystal Cruises, Inc.*, 41 F.3d 527, 529 (9th Cir.1994).

3. Much of Plaintiff's argument centers on the fact that DOHSA's own language precludes its application to the death of his daughter because the death occurred only two miles from Johnston Island, a territory of the United

This assumption requires the court to deem the acts to have met the two-part test of DOHSA application, specifically that the acts occurred on the high seas and beyond a marine league. DOHSA applies to Plaintiff's wrongful death action.[4]

## II. The Policy Underlying DOHSA Supports the Conclusion that DOHSA Should Apply to Wrongful Deaths on Johnston Island

The failure to apply DOHSA to wrongful deaths on Johnston Island would create an absurd result. A brief history of U.S. maritime law is important to understand the purpose of DOHSA. In 1886, the United States Supreme Court refused to recognize a general maritime law wrongful death claim. In *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the court stated that there was no common law remedy for wrongful death on land, therefore, there would not be one at sea. Unless Congress enacted legislation to provide a wrongful death cause of action in admiralty, no such remedy would be available. *See id.* at 212–13, 7 S.Ct. 140.

Thirty-four years later Congress enacted the Death on the High Seas Act. The purpose of DOHSA was to provide a wrongful death cause of action at sea without displacing the various state law wrongful death remedies. *See* 51 Cong. Rec. 1928, 1929 (Jan. 19, 1914); Right of Action for Death on the High Seas: Hearing Before Subcommittee II of the Committee on the Judiciary, 64th Cong. 17 (Feb. 4, 1916) (The DOHSA "does not interfere with the law in force ... It simply covers waters that are not now covered ...."). Out of

respect for state wrongful death statutes, Congress excepted DOHSA's application to deaths that occurred within a marine league of a territory of the United States. States had jurisdiction over acts committed within their territorial waters of three miles.

Congress's scheme under DOHSA, therefore, permitted state law to apply to wrongful deaths that occurred within their jurisdiction; deaths beyond their jurisdiction were covered by DOHSA. *See TWA Crash Case*, 209 F.3d at 204. Considering that Congress's purpose in permitting DOHSA's application only beyond three miles, it makes little sense to not apply DOHSA within three miles of Johnston Island. Johnston Island has no law of its own for Congress to be concerned about preserving.

Furthermore, DOHSA was enacted out of Congress's concern that there was no remedy for wrongful deaths on the high seas. At the time of DOHSA's passage, no right existed under general maritime law. *See The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. Not until 1970 did the United States Supreme Court recognize a cause of action under general maritime law for wrongful death. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. To understand DOHSA to not apply to the waters surrounding Johnston Island presumes that Congress specifically intended to exclude a cause of action for wrongful death to Johnston Island and other similar islands in the Pacific at a time when Congress was attempting to erase the embarrassment of *The Harrisburg*.[5] This Court

---

States. DOHSA expressly requires the death to occur beyond a marine league, or three miles from a territory of the United States. This argument ignores the command of TIPA which requires a court to *deem* the acts to have occurred on the high seas beyond a marine league from a United States territory.

4. Although *Moragne* was decided after DOHSA was enacted, DOHSA is not limited by *Moragne*. *See Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 118, 118 S.Ct. 1890, 141

L.Ed.2d 102 (1998) (DOHSA is not preempted by the general maritime law of *Moragne*).

5. DOHSA was enacted in part because the United States was one of the few western nations to not recognize a maritime cause of action for wrongful death. This was a source of embarrassment for many legislators. *See* H.R.Rep. No. 66–674, at 4 (1920) (the rule of *The Harrisburg* had been rejected by "[e]very country of western Europe," and was a "disgrace to civilized people.").

believes Congress intended DOHSA to apply to the waters surrounding territories of the United States that had no substantive law. A finding that Congress did not intend DOHSA to apply to the waters surrounding territories with no substantive law would ignore the fact that Congress only intended to except DOHSA's application from state territorial waters out of respect for federal-state comity. Therefore, this Court's conclusion that DOHSA apply to Plaintiff's wrongful death action through the substantive law provided by TIPA is consistent with Congress's intent in DOHSA.

### CONCLUSION

The Territories and Insular Possessions Act provides the substantive law for Johnston Island. That act requires courts to deem the events occurring on or near Johnston Island as having occurred on a vessel on the high seas. The applicable law, therefore, is the law that would apply to a vessel on the high seas.

The term "high seas" was understood at the time of the enactment of the Territories and Insular Possessions Act to mean international waters, or those waters beyond territorial waters. At the time of the enactment of the act, territorial waters was understood to mean the waters within three miles from the low-water mark of the shoreline. Therefore, the Territories and Insular Possessions Act requires courts to evaluate acts committed on Johnston Island as if they occurred on the high seas and beyond three miles from the low-water mark of the coastline.

The Death on the High Seas Act provides a right of action for wrongful death claims so long as the underlying acts occurred on the high seas beyond three miles from the low-water mark of the shoreline. DOHSA limits recovery for wrongful death claims to pecuniary damages.

Since all acts committed on Johnston Island must be deemed to have been committed on the high seas under TIPA, and high seas was understood to include all waters beyond three miles from the low-water mark of the coast, then all acts related to Plaintiff's cause of action for wrongful death are deemed to have been committed beyond three miles from Johnston Island. As a result, Plaintiff's wrongful death claim is subject to the application of DOHSA.

DOHSA will limit Plaintiff's recovery in this case to pecuniary damages.

In accordance with the foregoing, it is HEREBY ORDERED that Defendants Teleflex Marine, Inc. and Teleflex, Inc.'s Motion for Partial Summary Judgment on the Issue of Damages is hereby GRANTED and Plaintiff's Motion for Partial Summary Judgment is hereby DENIED.

IT IS SO ORDERED.