EDWIN G. TORRES. United States Magistrate Judge
This matter is before the Court on Carnival Corporation's ("Defendant" or "Carnival") motion to dismiss Kathleen Kennedy's ("Plaintiff") amended complaint. [D.E. 40]. Plaintiff responded on October 9, 2018 [D.E. 48] to which Carnival replied on *1311 October 26, 2018. [D.E. 55]. On November 5, 2018, the Court granted Carnival's request to supplement its motion and Plaintiff responded on December 10, 2018 [D.E. 64] to which Carnival replied on January 2, 2019. [D.E. 69]. Therefore, Carnival's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Carnival's motion to dismiss should be GRANTED in part and DENIED in part .[1]
I. BACKGROUND
Plaintiff filed this maritime action on March 5, 2018 [D.E. 1] as the personal representative of the estate of John Anthony Valentiejus-Riggle (the "Decedent"). Plaintiff alleges that, on July 6, 2017, the Decedent was a passenger aboard the Carnival Freedom where he sustained an injury which ultimately led to his death. Plaintiff claims that the Decedent was injured while participating in the Isla Pasion shore excursion in Cozumel, Mexico which was owned and operated by Defendant Operadora Isla de la Pasion (the "Excursion Entity"). Plaintiff's complaint contained five causes of action. On August 7, 2018, Judge Williams adopted the undersigned's Report and Recommendation ("R & R") on Defendant's motion to dismiss. [D.E. 35]. On August 21, 2018, Plaintiff filed an amended complaint with four counts - three of which are aimed at Carnival.[2] [D.E. 38].
II. APPLICABLE PRINCIPLES AND LAW
In ruling on Defendant's motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the [P]laintiff[ ]." Rivell v. Private Health Care Systems, Inc. , 520 F.3d 1308, 1309 (11th Cir. 2008) (citing Hoffman-Pugh v. Ramsey , 312 F.3d 1222, 1225 (11th Cir. 2002) ). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.' " Grossman v. Nationsbank, N.A. , 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long Cnty. , 999 F.2d 1508, 1510 (11th Cir. 1993) ). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.' " Dusek v. JPMorgan Chase & Co. , 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions ...." Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ) (alteration in original). Factual content gives a claim facial plausibility. Id. "[A] court's duty to liberally construe a *1312 plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." Peterson v. Atlanta Hous. Auth. , 998 F.2d 904, 912 (11th Cir. 1993).
III. ANALYSIS
A. Plaintiff's Current Capacity to Sue Does not Warrant Dismissal
Defendant argues that Plaintiff lacks standing to bring the claims asserted in her amended complaint because she is not the personal representative of the Decedent's Estate. Plaintiff claims, on the other hand, that any deficiencies with respect to her standing can be remedied and does not warrant dismissal of her amended complaint. Plaintiff states that she has initiated probate proceedings, and that any action she undertook on behalf of the Estate may relate back to the time of filing once she's appointed as the personal representative.
Only a real party in interest has the capacity to bring a lawsuit. See Tennyson v. ASCAP , 477 F. App'x 608, 610 (11th Cir. 2012) (citing Fed. R. Civ. P. 17 ). The purpose of Rule 17 "is to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." Celanese Corp. of Am. v. John Clark Indus. , 214 F.2d 551, 556 (5th Cir. 1954).[3] "The capacity doctrine relates to the issue of a party's personal right to litigate in deferral court." Glickstein v. Sun Bank/Miami N.A. , 922 F.2d 666, 670 (11th Cir. 1991) abrogated on other grounds by Saxton v. ACF Indus., Inc. , 254 F.3d 959 (11th Cir. 2001).
To determine whether Plaintiff has the capacity to bring this lawsuit, we look to Florida law. See id. Under Florida law, the only party who has the capacity to sue on behalf of an estate is the duly appointed legal representative of the estate. Tennyson , 477 F. App'x at 611 (citing Brake v. Murphy , 687 So. 2d 842, 843 (Fla. 3d DCA 1996) ; Fla. Stat. Ann. § 733.607(1) ). Here, Plaintiff concedes that she is not a personal representative of the Decedent's Estate. But, she is currently seeking appointment in Florida state court.[4]
The Eleventh Circuit's decision in Glickstein is instructive on whether Plaintiff's capacity to sue warrants dismissal of this action. In Glickstein, the plaintiff was a party to an action in state court where he sought to be declared the personal representative of an estate. See Glickstein, 922 F.2d at 671. The plaintiff's "pleadings and responses [made it] abundantly clear [that] his appointment would be assured once the judgment of the probate court... became final." id. The Eleventh Circuit held that the district court erred when it granted a motion to dismiss against the plaintiff based on his status as a personal representative. id.
The Court explained that the district court should have stayed the proceedings to await the determination by the state court action of the estate representative. Id. Dismissal can still be an appropriate remedy, however, in situations where appointment as personal representative is *1313 speculative or unsuccessful. See, e.g., Graca v. Rosebank Maritime, Inc. , 2005 WL 6458603 (11th Cir. 2005) (holding that the district court did not abuse its discretion in denying the plaintiff's relief from dismissal because he failed to provide the district court with any assurance that he would be appointed personal representative.); Gubanova v. The Blackstone Group L.P. , 2013 WL 12064500 (S.D. Fla. Feb. 25, 2013) (dismissal is appropriate in Florida if a plaintiff has made no effort to obtain status as a personal representative).
In this case the record shows that Plaintiff is actively seeking appointment to be the personal representative of the estate. Although not definitive, Plaintiff's familiar connection with the decedent is undoubtedly strong. Therefore, Plaintiff has shown that there is a material likelihood that the appointment will ultimately be made. Consequently, Defendant's motion to dismiss on this basis should be DENIED . Having said that, of course, the entire matter may be revisited at a later stage of this litigation if it turns out that Plaintiff's promises are fading. Standing is a matter that can be raised at any time in a case. And certainly before any final judgment is ever entered Plaintiff's standing as personal representative cannot be in doubt. So the denial of the motion at this stage should be without prejudice to later review. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").
B. The Death on the High Seas Act
Turning to the merits of the complaint's claims, Defendant maintains that DOHSA is Plaintiff's exclusive remedy and that, as a result, she is precluded from seeking non-pecuniary damages. The current complaint expressly seeks such damages; hence, Defendant seeks dismissal of those claims. Plaintiff argues, in response, that DOHSA does not apply because Plaintiff filed her action pursuant to 28 U.S.C. § 1333, and the general maritime law of the United States. Plaintiff also claims that she does not allege facts that implicate DOHSA and that Defendant's argument lacks merit. We turn first to the question whether DOHSA has any bearing at all in this case at the motion to dismiss stage.
1. Whether DOSHA is an Issue on a Motion to Dismiss
Plaintiff argues that a determination on the Death on the High Seas Act ("DOHSA") is inappropriate at the motion to dismiss stage. We disagree, however, because ruling on the applicability of DOHSA early in a case "will prevent unnecessary litigation in the event that DOHSA applies." Balachander v. NCL (Bahamas) Ltd. , 800 F. Supp. 2d 1196, 1201 (S.D. Fla. 2011), abrogated on other grounds by Franza v. Royal Caribbean Cruises, Ltd. , 772 F.3d 1225 (11th Cir. 2014) (citations omitted). Indeed, our Court has found that deciding the "DOHSA's applicability at an early stage in litigation is preferable ," particularly when the plaintiff does not dispute the injury occurred on the high seas. Perricone v. Carnival Corp. , 2016 WL 1161214, at *5 (S.D. Fla. Mar. 24, 2016).
Here the location of the injury is undisputed based on the facts alleged in the amended complaint, which thus counsels in favor of early review of the DOHSA issue. See Moyer v. Rederi, 645 F. Supp. 620, 627 (S.D. Fla. 1986) ("Authority is clear that a *1314 cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission was consummated in an actual injury, not at the point where previous or subsequent negligence actually occurred.); see also Motts v. M/V Green Wave , 210 F.3d 565, 567 (5th Cir. 2000) ("DOHSA applies where the decedent is injured on the high seas, even if a party's negligence is entirely land-based and begins subsequent to that injury."). And it is also undisputed that the Decedent suffered injuries that caused his death while in Mexican territorial waters. Finally, the amended complaint, most significantly, does not that either the accident that gave rise to the injury, the injury itself, or the resulting death occurred within the territorial waters of the United States.
As a result, this issue may be decided at the motion to dismiss stage. See, e.g., Elbaz v. Royal Caribbean Cruises, Ltd. , 2017 WL 3773721, at *3 (S.D. Fla. Jan. 12, 2017) ("It is undisputed Garcia's death occurred on the high seas outside U.S. territorial waters.... As such, the DOHSA applies and preempts all other forms of wrongful death claims under state or general maritime law. Therefore, Count I - alleging RCCL's negligence caused Garcia's death - must be dismissed."); In the Matter of The Complaint v. Sea Star Line, LLC, 2016 WL 6609219, at *3 (M.D. Fla. Aug. 10, 2016) (granting motion to dismiss and finding DOHSA applies as "other courts have held that determining whether DOHSA applies may be properly decided at the motion to dismiss stage, so long as the complaint contains factual allegations that the death or mortal injury occurred on the high seas."); Ridley v. NCL (Bahamas) Ltd. , 824 F. Supp. 2d 1355, 1360 (S.D. Fla. 2010) (determining "as a matter of law ... the location of the negligent actions controls the application of the Death on the High Seas Act" at the motion to dismiss stage). This amended complaint lends itself to a determination of DOHSA jurisdiction as a matter of law. We will thus proceed to that question.
2. Whether DOHSA Applies
DOSHA generally governs wrongful death actions occurring at least twelve nautical miles from the United States coastline.[5] DOHSA requires that a personal representative bring the cause of action. The representative can only bring a claim and attempt to recover on behalf of the following individuals: a decedent's spouse, a parent, a child, or a dependent relative. See 46 U.S.C. § 30301. Recovery under DOHSA, if it applies, is expressly limited to pecuniary losses; claims for non-pecuniary losses are barred. Sanchez v. Loffland Bros. Co. , 626 F.2d 1228, 1230 (5th Cir. 1980) ("DOHSA specifically limits recoverable damages to those pecuniary in nature."). It is also well settled that DOHSA preempts conflicting state wrongful death statutes and makes itself the exclusive remedy. See Ford v. Wooten , 681 F.2d 712, 716 (11th Cir. 1982) ("Where a cause of action exists for wrongful death under DOHSA, no additional action exists under general maritime law for wrongful death."); Offshore Logistics, Inc., v. Tallentire, 477 U.S. 207, 231, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (after examining the legislative history and text of DOHSA, held that damages provided in DOHSA could not be supplemented under state law).
Assuming the facts in Plaintiff's amended complaint are true, the Decedent participated in one of Defendant's excursions. The excursion was advertised as a "getaway *1315 to a private island for cruise guests, complete with food, beverages, and water float inflatable." [D.E. 1]. However, the water inflatables were in an area by a Mexican beach that was subjected to changing tides and shallow water. The Decedent dove into the shallow water, aiming for an inflatable. Tragically, the dive into the shallow water resulted in blunt force trauma to the head and neck, as well as asphyxia by immersion. The Decedent died on the shore.
Plaintiff argues that DOHSA does not apply because (1) the events that led to the Decedent's death were not related to maritime activities, and (2) the injury occurred on the beach - not in navigable open waters. Defendant counters with the decision in Moyer v. Rederi , 645 F. Supp. 620 (S.D. Fla. 1986), that illustrates why DOSHA applies in this case.
In Moyer , our court held that DOHSA applied where the decedent was a cruise ship passenger injured on a snorkeling expedition and later died on the shore. Defendant concludes that the same result follows here because the excursion that Plaintiff is alleging in the complaint is not materially different. Plaintiff, however, insists that the facts in Moyer are very distinguishable because the activities that led to the Decedent's death are more similarly aligned to a land-based excursion.
Our objective assessment of the dispute convinces us that Plaintiff's land-based argument holds little weight because the injury indisputably occurred in the water. The fact that the use of the water inflatables began as part of a shore excursion is beside the point because, like the snorkeling shore expedition in Moyer, such use ended up reaching the water as intended. In both cases, the plaintiffs and the resulting injuries ended up occurring on the "high seas". Moyer , 645 F. Supp. at 628. Thus, if Moyer is correct, DOHSA applies with equal force here.
Moyer relied in great part on the Supreme Court's decision in Executive Jet Aviation, Inc., v. City of Cleveland , 409 U.S. 249, 273, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), which held that a cause of action falling under admiralty jurisdiction must have a maritime nexus or a significant relationship to maritime activity.[6] A maritime nexus is only required "in the absence of legislation to the contrary," and the Supreme Court expressly stated that DOHSA was such a statute. id. at 274 n.26, 93 S.Ct. 493. The district court in Moyer applied the Executive Jet Aviation test to determine whether a shore-based snorkeling expedition was connected to maritime activities:
In the case here, the maritime nexus lies not in the nature of the activity being engaged in at the time of injury or death. Indeed, an accident relating solely to a shore-based snorkeling expedition might not qualify for admiralty jurisdiction under the Executive Jet Aviation rule. The nexus here lies rather in the relationship of the snorkeling expedition, on which decedent sustained his ultimately death-inflicting injury, to a commercial, high seas shipping venture featuring travel from the Port of Miami, Florida, via the Atlantic Ocean and the Gulf of Mexico, to Cozumel, Mexico. The snorkeling expedition, organized by an "agent or employee" of Defendant cruise ship company, can only be viewed as integrally connected to a traditional maritime activity. See *1316 Kuntz v. Windjammer "Barefoot" Cruises, Ltd. , 573 F. Supp. 1277 (scuba diving accident where there was a commercial vessel in navigable waters, providing a maritime service to passengers for a fee, with the service promoted, conducted, and supervised by a member of the crew).
Moyer , 645 F. Supp. at 627.
After determining the maritime nexus between the incident and the death, the court, in an opinion authored by then District Judge Stanley Marcus, concluded that admiralty jurisdiction applied regardless of the decedent's death occurring ashore because other courts have repeatedly declared "that wrongful death actions deriving from an injury on the high seas fall under admiralty jurisdiction, even if the death did not occur until the injured party had been brought on land." Id.
Judge Marcus was entirely correct then, and his judgment is even more apt now that intervening Supreme Court and circuit court authority further support his reasoning. To begin with, as the Supreme Court put it some time ago, "[t]he right to recover for death depends upon the law of the place of the act or omission that caused it and not upon that of the place where death occurred." Vancouver S.S. Co., Ltd. v. Rice , 288 U.S. 445, 447, 53 S.Ct. 420, 77 L.Ed. 885 (1933) (plaintiff intestate died on land of injuries sustained aboard cargo ship during loadings); see also Public Administrator of the County of New York v. Angela Compania Naviera, S.A. , 592 F.2d 58 (2d Cir. 1979) (finding that DOSHA applied where seaman died in an Athens hospital eight months after receiving allegedly inadequate medical treatment onboard a freighter); Chute v. United States , 466 F. Supp. 61 (D. Mass. 1978) (finding that DOHSA applied to plaintiff's decedent who died in a Massachusetts hospital after being taken ashore following the sinking of a yacht in Nantucket Sound).
Here, the injury that led to the Decedent's death occurred in the water. The complaint expressly alleges as much. That triggers admiralty jurisdiction, as limited by DOHSA, even though the Decedent may have ultimately succumbed on land at the Mexican shore. Plaintiff's land-based argument to get around DOHSA thus fails. See, e.g., Motts, 210 F.3d at 569 ("[A]s ... several Fifth Circuit decisions have made clear, DOHSA also confers jurisdiction if the decedent is on the high seas at the time he suffers his mortal injury.").
Plaintiff then falls back on the argument that DOHSA does not apply because the negligence and resulting injury began along the shores of Mexico, which cannot be deemed to be "the high seas" as DOHSA requires. But that characterization is also unhelpful. Plaintiff mistakenly believes that, for DOHSA to apply, the injury must occur only in open waters (i.e. far from shore and out to sea). But the prevailing rule in the Eleventh Circuit, consistent with rulings in numerous courts around the country, is that maritime incidents occurring within the territorial waters of foreign states still fall within DOHSA. See Moyer , 645 F. Supp. at 623 ; see also Sanchez v. Loffland Brothers Company , 626 F.2d 1228 (5th Cir. 1980) (finding that DOSHA applied where decedent died on a vessel in a Venezuelan lake); Kuntz v. Windjammer "Barefoot Cruises", LTD. , 573 F. Supp. 1277 (W.D. Pa. 1983), aff'd , 738 F.2d 426 (3d Cir. 1984) (finding that DOSHA applied where the decedent drowned while participating in a scuba activity in Bahamian territorial waters. The Bahamian territorial waters constituted the "high seas" for purposes of DOHSA); cf. Bernard v. World Learning Inc. , 2010 WL 11505188, at *8 (S.D. Fla. June 4, 2010) (issue of fact existed whether mortal *1317 land-based injury precipitated the death on the high seas, but acknowledging that "DOHSA applies where the injury precipitating death occurred on the high seas even if death occurred on land").
The reasoning supporting these decisions begins with the interpretation of what the statute means by "high seas." While DOHSA does not provide a definition of "high seas", "open waters", or "territorial waters" within its statutory language, the Second Circuit - in In re Air Crash Off Long Island, New York, on July 17, 1996 , 209 F.3d 200 (2d Cir. 2000) - persuasively explained what was intended by "high seas." In that case the Second Circuit concluded that the high seas began where the territorial waters end. See id. at 210-211. The Court thus held that DOHSA did not apply to wrongful death actions brought when an airline crashed eight miles from the shores of New York. The court explained that, before DOHSA could apply, the alleged wrongful death must occur both beyond a marine league (i.e. "on the high seas").
Further support can be found in Howard v. Crystal Cruises, Inc. , 41 F.3d 527 (9th Cir. 1994), where the Ninth Circuit held that DOHSA governed the wrongful death claim of an American who was injured while disembarking a cruise ship in Mexico because "high seas" includes foreign territorial waters. See also Roberts v. United States , 498 F.2d 520,527 n.7 (9th Cir. 1974) ("Because Congress only has power to fix the extent of territorial waters measured from the shores of its own country it may well have considered all water beyond one marine league from those shores to be 'high seas' for purposes of DOHSA so long as navigable, even though within the territorial waters of a foreign state."). The Ninth Circuit recognized that DOHSA "was expressly designed to cover wrongful deaths occurring outside the territorial boundaries of the United States." Howard , 41 F.3d at 530.
Courts have also found that the actual depth of the water where a death-precipitating injury occurs is irrelevant. See Moyer , 645 F. Supp. at 624. For instance, in Chute v. United States , 466 F. Supp. 61 (D. Mass. 1978), the district court applied DOHSA where the decedents died as a result from the sinking of a yacht in four-foot seas, beyond the territorial limit set forth in DOHSA. In that case, the court held that "waters whether a few feet deep or several hundred feet deep, beyond the [12]-mile limit would come within the term 'high seas'." id. at 65. As support, the court relied on a statement made during the final congressional debate on DOSHA, that "anything beyond the [12]-mile limit is considered as on the high seas." Moyer , 645 F. Supp. at 624 (quoting Chute, 466 F. Supp. at 65, n.10, citing 59 Cong. Rec. 4482 (1920)).
Thus, we readily conclude that Plaintiff's interpretation of the limitations of DOHSA does not hold water. After all, the Fifth Circuit affirmed a finding that DOHSA and general maritime law governed in a case where a seaman's injury occurred on a lake, not an ocean, well inside Venezuelan territory. The reason why applies with equal force here: notwithstanding the foreign territorial connection, a "maritime injury" still took place for our purposes because it occurred outside of the United States territorial waters. Sanchez , 626 F.2d at 1230. That is all that DOHSA requires. It thus follows that an alleged wrongful death occurring in the ocean more than twelve nautical miles from the United States, like the waters off the coast of a Mexican beach, must be considered "the high seas" for DOHSA purposes. Plaintiff's position finds scant support in *1318 circuit caselaw interpreting and applying DOHSA.
Consequently, based on the abundance of cases that have applied DOSHA, we conclude that DOHSA applies to this action. The motion correctly argues that DOHSA principles and limitations must be applied to this complaint, which includes demands for pecuniary, non-pecuniary, and punitive damages. Because we find that DOSHA applies as a matter of law to all claims alleged in the complaint, any demand for relief that seeks non-pecuniary losses should be dismissed and/or stricken as being contrary to DOHSA, as we further explain below.
3. Claims for Non-pecuniary Damages are Stricken
DOHSA provides that "the recovery in an action under this chapter shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." 46 U.S.C. § 30303. The Supreme Court has interpreted the universe of "pecuniary losses" to:
Not [be] so narrow as to exclude damages for the loss of services of the husband, wife, or child, and when the beneficiary is a child, for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation.
Michigan Cent. R. Co. v. Vreeland , 227 U.S. 59, 71, 33 S.Ct. 192, 57 L.Ed. 417 (1913). Moreover, funeral expenses are considered pecuniary damages under DOHSA. See Sea-Land Servs. v. Gaudet , 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), abrogated on other grounds by Miles v. Apex Marine Corp. , 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (holding that funeral expenses may be awarded under DOHSA in circumstances where "the decedent's dependents have either paid for the funeral or are liable for its payment").
The Supreme Court in Offshore Logistics, Inc., v. Tallentire examined the legislative history and language of DOHSA in deciding whether the damages provided in DOHSA could be supplemented in another context. 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). In that case, the decedent's relatives sought to recover, in addition to their pecuniary losses authorized by DOHSA, non-pecuniary losses through state laws. The Supreme Court rejected the plaintiff's argument that they were entitled to resort to state death acts to supplement their DOHSA remedy. Id. , 477 U.S. at 231, 106 S.Ct. 2485. The Court concluded that where DOHSA applies, as it does here, state statutes are preempted.
In Dooley v. Korean Air Lines Co., Ltd. , 524 U.S. 116, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998), the Supreme Court expanded on the holding in Tallentire . In Dooley , the Supreme Court considered whether a plaintiff could supplement their DOHSA remedy and recover for the decedent's pain and suffering under the general maritime law. There, the Supreme Court held that Congress "provided the exclusive recovery for deaths that occur on the high seas" through DOHSA and that only pecuniary damages can be applied. Dooley , 524 U.S. at 121-22, 118 S.Ct. 1890. Congress' express limitation on damages foreclosed any recovery for non-pecuniary losses, such as loss of society, in a general maritime action. Miles, 498 U.S. at 31, 111 S.Ct. 317.
Here, Plaintiff seeks damages including: 1) loss of companionship and protection; 2) mental pain and suffering; 3) loss of net accumulations of the Estate; 4) medical and funeral expenses; and 5) future loss of support and services. Because DOHSA applies *1319 to Plaintiff's action, Plaintiff is barred from seeking non-pecuniary damages. Hence the damages sought in the complaint for loss of companionship and mental pain and suffering should be STRICKEN with prejudice .
4. Plaintiff's Claim for Punitive Damages Also Fails
Plaintiff also claims that she is entitled to punitive damages because Defendant's conduct was "intentional and done with an intent to harm Plaintiff. Specifically, Defendant intentionally chose to promote the use of the water inflatables without warning guests of the dangers associated with the excursion." [D.E. 48]. Based on these allegations, Plaintiff argues that the motion to dismiss or strike the punitive damages claim should be denied, at least at this stage.
We have conducted an extensive review of this issue and conclude, based upon the state of the law today, that punitive damages are unavailing in this case for two separate reasons. First, because we have found that DOHSA governs the damages recoverable in this case, punitive damages are not recoverable as a matter of law. We will discuss our analysis of that particular question in some detail. Second, we alternatively conclude that, even if punitive damages were still viable (either because DOHSA was later found not to apply or because punitive damages were still possible even in a DOHSA case) the allegations in this complaint do not support a plausible finding of intentional or wanton conduct necessary to sustain a punitive damages award.
(a) Punitive damages are barred under DOHSA
The Fifth and Ninth Circuits expressly hold that punitive damages are barred as a matter of law under DOHSA for any wrongful death claims covered by the statute. Most district courts have followed suit. The Supreme Court, however, has never addressed the issue directly, and neither has the Eleventh Circuit as best as we can tell. Some in the admiralty bar, however, have advanced the argument that the Supreme Court's decision in Atlantic Sounding should reopen the question. And some commentary on the subject, both before and after Atlantic Sounding, have described the issue, as settled as it may be among lower federal courts, to be an open question. In our view, however, the text and historical purpose of the DOHSA preclude such an interpretation. Congress is free to amend the statute to provide for a punitive damage recovery. But until it does, the majority view is sound and DOHSA currently precludes any recovery for punitive damages.
First, we look back to the relevant historical context. Prior to the enactment of DOHSA, tort recoveries in admiralty cases were limited to applicable wrongful death statutes enacted by particular states. The Supreme Court in 1886 declined to recognize a common law wrongful death claim arising under general maritime law separate and apart from the scope and limits of any applicable state statute. The Harrisburg, 119 U.S. 199, 200, 7 S.Ct. 140, 30 L.Ed. 358 (1886) (citing [ Mobile Life] Insurance Co. v. Brame, 95 U. S. 754, 756, 24 L.Ed. 580 (1877) (" 'that by the common law no civil action lies for an injury which results in death.' ")). Though that decision was revisited and reversed a century later for maritime actions caused by the unseaworthiness of marine vessels, see Moragne v. States Marine Lines, Inc. , 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the state of the law from 1877 through 1920 undoubtedly precluded any recovery for wrongful death under federal common law.
Even before the celebrated Titanic sank in 1912, efforts were underway to address the perceived deficiency in admiralty law *1320 that followed The Harrisburg 's myopic reasoning that courts were not equipped to change settled common law rules. 119 U.S. at 214, 7 S.Ct. 140 ("as it is the duty of courts to declare the law, not to make it, ..."). Those early efforts accelerated after 1912 and the public uproar over the extensive loss of life that resulted from that disaster.[7]
Those efforts culminated, after a series of compromises, in the enactment of the Death on the High Seas Act, supra, (1920) (now codified at 46 U.S.C. § 30301, et seq ). As we discussed above, the text of the statute is unambiguous as to the limits of the recovery available to the personal representative of the decedent: "fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." Id. § 30303. As the Supreme Court explained in Dooley, this provision was intended to be the exclusive recovery for deaths occurring on the high seas. 524 U.S. at 123, 118 S.Ct. 1890 ("By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas.").
Without having to analyze the effect of other cases or statutes or harmonizing those authorities with the express limitations found in section 30303, the answer to the question presented here is self-evident under modern principles of statutory interpretation. Briefly, those principles require that we "respect the role of the Legislature, and take care not to undo what it has done. A fair reading of legislation demands a fair understanding of the legislative plan." King v. Burwell, --- U.S. ----, 135 S. Ct. 2480, 2496, 192 L.Ed.2d 483 (2015). So we must follow the " 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' " Utility Air Regulatory Grp. v. E.P.A. , 573 U.S. 302, 320, 134 S.Ct. 2427, 189 L.Ed.2d 372 (2014) (citation omitted). "If the statutory language is plain, we must enforce it according to its terms." Hardt v. Reliance Standard Life Ins. Co. , 560 U.S. 242, 251, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). But often the "meaning - or ambiguity - of certain words or phrases may only become evident when placed in context ... Our duty, after all, is 'to construe statutes, not isolated provisions.' " King, 135 S. Ct. at 2489 (citations omitted).
Along those same lines, other relevant principles are significant here. In interpreting a statute it is understood that "Congress legislates against the backdrop" of certain unexpressed presumptions. EEOC v. Arabian American Oil Co. , 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). One such presumption is that, when Congress employs a common law term, the cluster of common law ideas embodied in that term is imported into statutory text. E.g., Carter v. United States, 530 U.S. 255, 264, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (citing Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ("[W]here Congress borrows terms of art in which *1321 are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.")). And the other related presumption is that Congress is aware of existing law when it enacts legislation. Miles, 498 U.S. at 32, 111 S.Ct. 317 (citing Cannon v. University of Chicago, 441 U.S. 677, 696-97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ).
Applying these principles here is fatal to the argument that punitive damages are recoverable under section 30303. Congress's judgment to limit DOHSA damages to "fair compensation" - a concept well established in the common law - is decisive. The common law recognized two general categories of damage: compensatory damages "for the injuries received" and, by 1763, exemplary damages that were deemed necessary where damages were "for more than the injury received" so as to "deter from any such proceeding for the future." See Wilkes v. Wood, 98 Eng. Rep. 489, 498 (1763), cited and quoted in Exxon Shipping Co. v. Baker, 554 U.S. 471, 490, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) ). English common law thus fully recognized the viability of such "exemplary damages," which damages crossed the Atlantic by the time that the colonies declared their independence. See, e.g., Coryell v. Colbaugh, 1 N.J.L. 77 (1791) (jury instructed "to give damages for example's sake, to prevent such offenses in [the] future").
The development over time of the American common law of torts continued to recognize the distinction between damages designed as "fair compensation" versus additional damages designed to set an example for others. In Day v. Woodworth, the Supreme Court affirmed the continued viability of these distinct measures of damage:
It is a well-established principle of the common law that, in actions of trespass and all actions on the case for torts, a jury may inflict what are called "exemplary," "punitive," or "vindictive" damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff.... In many civil actions, ... the wrong done to the plaintiff is incapable of being measured by a money standard, and the damages assessed depend on the circumstances, showing the degree of moral turpitude or atrocity of the defendant's conduct, and may properly be deemed "exemplary" or "vindictive" rather than "compensatory."
54 U.S. (13 How.) 363, 14 L.Ed. 181 (1852).
And most significantly here, the categorization of "exemplary" or "punitive" damages as something far different from "compensation" was the predominant view by the end of the nineteenth century and' the start of the twentieth century. See, e.g., Scott v. Donald, 165 U.S. 58, 86, 17 S.Ct. 265, 41 L.Ed. 632 (1897) ("Damages have been defined to be the compensation which the law will award for an injury done, and are said to be exemplary and allowable in excess of the actual loss where a tort is aggravated by evil motive, actual malice, deliberate violence, or oppression."); Lake Shore & M.S. Ry. Co. v. Prentice, 147 U.S. 101, 107, 13 S.Ct. 261, 37 L.Ed. 97 (1893) ("Exemplary or punitive damages [are] awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others ...."); Milwaukee & St. Paul Rwy. Co. v. Arms , 91 U.S. 489, 492-93, 23 L.Ed. 374 (1875) ("it may well be considered whether the doctrine of exemplary damage cannot be reconciled with the idea that compensation alone is the true measure of redress.
*1322 But jurists have chosen to place this doctrine on the ground, not that the sufferer is to be recompensed, but that the offender is to be punished; ..."); see generally A. Sebok, What Did Punitive Damages Do? Why Misunderstanding the History of Punitive Damages Matters Today, 78 Chi.-Kent L. Rev. 163, 204 (2003) ; 1 Schlueter, Punitive Damages §§ 1.3(C) - (D).
So when the DOHSA statute was enacted to change the legal landscape for certain wrongful death claims in admiralty, one obvious compromise was the limitation of damages in derogation of existing common law principles. "Fair and just compensation" was expressed to be the only measure of damages. By the use of that term, Congress obviously intended to adopt common law principles of "compensation" into the statute. And only that compensatory and remedial concept was included as evidenced by the next limitation that followed: "for the pecuniary loss sustained by the persons for whose benefit the suit was brought ...."[8]
"Pecuniary" losses were also specifically recognized in the common law at the time as being limited to compensation for the actual wrong suffered by a plaintiff, and nothing more. See, e.g., Milwaukee & St. Paul , 91 U.S. at 492 ("It is undoubtedly true that the allowance of anything more than an adequate pecuniary indemnity for a wrong suffered is a great departure from the principle on which damages in civil suits are awarded."). Indeed the Supreme Court expressly defined pecuniary losses to be something in addition to, and thus separate from, exemplary or punitive damages in Barry v. Edmunds, 116 U.S. 550, 562, 6 S.Ct. 501, 29 L.Ed. 729 (1886) (cause of action in trespass permitted recovery for plaintiff's "actual, direct and immediate pecuniary loss" in addition to "exemplary damages calculated to vindicate his right and protect it against future similar invasions.").
Because this view of the common law at the time of the statute's passage was settled, and Congress is presumed to know what the law was at the time, only one persuasive conclusion can be drawn: Congress impliedly forbade an award of punitive damages for an action lying under DOHSA. Congress only expressly sanctioned a compensatory damage award for actual damages and losses suffered by the decedent's survivors. Armed with that knowledge, Congress chose to pick and choose from the available remedies in determining what could be awarded under DOHSA for deaths on the high seas in admiralty. In doing so, Congress was certainly extending protections to the decedent's survivors that The Harrisburg had declined to award without legislative action. But those protections were expressly limited in scope. And they certainly did not include exemplary or punitive damages.
Second, Congress's use of that damage limitation was not novel. The Congress had already enacted a similar survivor's wrongful death statute, the Federal Employer's Liability Act, 45 U.S.C. § 51, which had just been amended in 1908. That statute granted a right of recovery for injured workers or their survivors against railroad companies operating in interstate commerce, but also based on a similar damage limitation: "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such *1323 employee; ..." Though the extent of "damages" available was not expressly defined in that statute, the Supreme Court recognized that using the common law term "damages" in isolation, like other survivor's statutes of the day, was tantamount to a limitation for only pecuniary losses:
This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had,-one proceeding upon altogether different principles. It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only .
Michigan Cent. R. Co. v. Vreeland , 227 U.S. 59, 68, 33 S.Ct. 192, 57 L.Ed. 417 (1913) (emphasis added).
The Court reasoned that damages in such statutes had to be deemed pecuniary to delineate the proper measure of damages to a survivor:
A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.'
id. at 71, 33 S.Ct. 192 (citation omitted).
Congress, understanding this principle seven years later, adopted a similar survivor's statute in the DOHSA and expressly defined "fair and just compensation" to be limited to pecuniary losses. As Vreeland shows, of course, the statute would likely have been interpreted to that effect without that language. See also American R.R. Co. Porto Rico v. Didricksen, 227 U.S. 145, 149, 33 S.Ct. 224, 57 L.Ed. 456 (1913) ("The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained."). But by including it, Congress made it abundantly clear that it was limiting the scope of damages available under the DOHSA to compensation, nothing more and nothing less. That means that punitive damages are unavailable under DOHSA, just as much as they are unavailable under the FELA. See, e.g., Gulf, Colo., & Santa Fe Ry. Co. v. McGinnis, 228 U.S. 173, 175, 33 S.Ct. 426, 57 L.Ed. 785 (1913) (recovery under FELA "must ... be limited to compensating those ... as are shown to have sustained some pecuniary loss"); Kozar v. Chesapeake & Ohio Ry. , 449 F.2d 1238, 1241-42 (6th Cir. 1971) (Supreme Court decisions interpreting FELA are "clear, unambiguous statements ... holding that damages recoverable under the Act are compensatory only."); Wildman v. Burlington N. R.R. Co. , 825 F.2d 1392, 1393 (9th Cir. 1987) (following Jones Act precedent, punitive damages unavailable under the FELA).
Third, since the statute's passage the Supreme Court's cases directly interpreting DOHSA have consistently drawn analogous conclusions. The statute only allows for compensatory damages for the pecuniary losses suffered by the decedent's beneficiaries. See Sea-Land Services, Inc. v. Gaudet, 414 U.S. at 583-87, 94 S.Ct. 806 (distinguishing remedies available under DOHSA, which are limited to pecuniary losses that exclude recovery for *1324 loss of society; finding that common law remedy for wrongful death in territorial waters could include loss of society damages); Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ("The Death on the High Seas Act, however, announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages.... The Act does not address every issue of wrongful-death law, ... but when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless.") (reversing award of damages for loss of society under DOHSA because the statute is limited to pecuniary losses); Miles v. Apex Marine Corp. , 498 U.S. at 32-34, 111 S.Ct. 317 ("We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them. Congress has placed limits on recovery in survival actions that we cannot exceed. Because this case involves the death of a seaman, we must look to the Jones Act.") (analogizing recovery for pecuniary losses under DOHSA to recovery under Jones Act, which thus precludes recovery for loss of society damages in a general maritime action for wrongful death of a Jones Act seaman); Offshore Logistics v. Tallentire, 477 U.S. at 230-32, 106 S.Ct. 2485 (DOHSA limited to pecuniary losses that preclude recovery of loss of society damages; such damages are not recoverable under state wrongful death claim in addition to DOHSA; "To read § 7 as intended to preserve intact largely nonexistent or ineffective state law remedies for wrongful death on the high seas would, of course, be incongruous. Just as incongruous is the idea that a Congress seeking uniformity in maritime law would intend to allow widely divergent state law wrongful death statutes to be applied on the high seas."); Zicherman v. Korean Air Lines Co. , 516 U.S. 217, 231, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996) ("We conclude that Articles 17 and 24(2) of the Warsaw Convention permit compensation only for legally cognizable harm, but leave the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules. Where, as here, an airplane crash occurs on the high seas, DOHSA supplies the substantive United States law. Because DOHSA permits only pecuniary damages, petitioners are not entitled to recover for loss of society."); Dooley v. Korean Air Lines, 524 U.S. at 121-22, 118 S.Ct. 1890 (because DOHSA "provided the exclusive recovery for deaths that occur on the high seas" non-pecuniary losses like loss of society damages and pain and suffering damages are preempted and non-recoverable under general maritime law).
Fourth, though the Eleventh Circuit has not directly addressed the availability of punitive damages under DOHSA, it is inconceivable that our circuit would ignore the text, historical context, and accepted application of DOHSA to allow for the recovery of punitive damages under the statute. All indications are to the contrary. See, e.g., Tucker v. Fearn, 333 F.3d 1216, 1222 (11th Cir. 2003) (rejecting recovery for loss of society damages under general maritime law in favor of nondependent survivors of decedent killed in territorial waters; "DOHSA provides a wrongful death action in favor of anyone killed on the high seas, but limits recoverable damages in wrongful death suits to 'pecuniary loss sustained by the persons for whose benefit the suit is brought.' ... In light of this limitation, it would be inconsistent with Congress's 'considered judgment' for this Court to permit the recovery that *1325 plaintiff Tucker seeks in this case under general maritime law.") (following Higginbotham and Miles , as well as Norfolk Shipbuilding Drydock Corp. v. Garris, 532 U.S. 811, 820, 121 S.Ct. 1927, 150 L.Ed.2d 34 (2001) ("[w]hile there is an established and continuing tradition of federal common lawmaking in admiralty, that law is to be developed, insofar as possible, to harmonize with the enactments of Congress in the field." ... "Because of Congress's extensive involvement in legislating causes of action for maritime personal injuries, it will be the better course, in many cases that assert new claims beyond what those statutes have seen fit to allow, to leave further development to Congress.")); Ford v. Wooten , 681 F.2d 712, 716 (11th Cir. 1982) ("As with the Jones Act, 'supplementation' of DOHSA's pecuniary loss remedy with the Moragne loss-of-society remedy would totally alter the remedial scheme, which already provides a cause of action for death due to negligence.... At least where statutory remedies exist, we deem consistency with the federal remedial schemes to be more important than the somewhat limited loss of uniformity. Therefore, we hold that where a cause of action exists for wrongful death under DOHSA, no additional action exists under general maritime law for wrongful death caused by negligence; ..."); Solomon v. Warren, 540 F.2d 777, 789 (5th Cir. 1976) (recognizing "the narrow pecuniary loss standard of DOHSA").[9]
Fifth, decisions from our Court have consistently rejected efforts to retain punitive damage awards for claims governed by DOHSA. See, e.g., Broberg v. Carnival Corp. , 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017) ("Where an action for wrongful death exists under the Death on the High Seas Act, the statute provides punitive damages are unavailable."); Blair v. NCL (Bahamas) Ltd. , 212 F. Supp. 3d 1264, 1269 (S.D. Fla. 2016) (striking non-pecuniary damage claims from complaint in DOHSA action including claim for punitive damages); Cubero v. Royal Caribbean Cruises Ltd. , 2016 WL 4270216, at *2 (S.D. Fla. Aug. 15, 2016) (same); see also Lasky v. Royal Caribbean Cruises, Ltd. , 850 F. Supp. 2d 1309, 1312 (S.D. Fla. 2012) ("Moreover, the section of DOHSA that applies to commercial aviation accidents provides for recovery of non-pecuniary damages. 46 U.S.C. § 30307. Accordingly, if Congress intended to provide such damages for other types of accidents under DOHSA, it could have done so. Thus, DOHSA does not permit Plaintiff to recovery non-pecuniary damages.").
Sixth, though not binding, highly persuasive decisions from other Courts of Appeal expressly reject awards for punitive damages in DOHSA cases. The rationale *1326 in these cases follows the text, historical context and interpretation of section 30303 that limits damages to "fair compensation" and "pecuniary losses." See, e.g., Motts v. M/V Green Wave, 210 F.3d 565, 569 (5th Cir. 2000) ("Because DOHSA does not permit the award of non-pecuniary damages, ... and preempts all wrongful death actions under state law where it applies, see [ Dooley ,] Appellee can recover punitive and other non-pecuniary damages only if DOHSA is inapplicable.") (holding that DOHSA applied and reversing award for non-pecuniary damages, including punitive damage award); Bergen v. F/V St. Patrick, 816 F.2d 1345, 1347 (9th Cir. 1987), modified on reh'g, 866 F.2d 318 (9th Cir. 1989) ("Only pecuniary damages are available under the Jones Act, 46 U.S.C. § 688, and under the Death on the High Seas Act. 46 U.S.C. § 762; ... Punitive damages are non-pecuniary damages unavailable under the Jones Act.... Punitive damages are therefore also unavailable under DOHSA.") (reversing award of punitive damages that was grounded on general maritime law as supplement to DOHSA damages); cf. McBride v. Estis Well Serv., L.L.C. , 768 F.3d 382, 388 (5th Cir. 2014) (" Miles court established 'a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act or the general maritime law.' ") (holding in Jones Act case that punitive damages were not recoverable and could not be categorized as pecuniary losses); Batterton v. Dutra Grp. , 880 F.3d 1089, 1096 (9th Cir.), cert. granted, --- U.S. ----, 139 S. Ct. 627, 202 L.Ed.2d 454 (2018) (disagreeing with McBride and awarding punitive damages in unseaworthiness claim for injured seaman but only because such a claim falls outside the scope of statutory causes of action like DOHSA; "There is no way to compensate a dead seaman for the wrong done to him. Compensation for his survivors is generally limited by statute to their resulting 'pecuniary loss.' ").
Finally, any doubt about the proper application of DOHSA's damage limitation is foreclosed as a practical matter by the Supreme Court's analysis of a related issue - the remedies available to survivors under general maritime law, specifically loss of society damages. In Miles , after extended discussion and analysis, the Court limited the survivors in a maritime wrongful death action to recovery of their "pecuniary losses." As a result, the Court denied recovery for damages for loss of society. 498 U.S. at 30-33, 111 S.Ct. 317. In considering this element of damages, the Court began its analysis by interpreting its DOHSA decision in Mobil Oil Corp. v. Higginbotham . It noted that Higginbotham rejected a claim for loss of society because Congress, in DOHSA, expressly limited recovery to "pecuniary losses." It therefore declined to supplement the statute and allow more expansive damages. The Court emphasized the important language it relied on from Higginbotham : "But in an 'area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.' " Id. at 31, 111 S.Ct. 317.
The Court then reasoned that its logic in Higginbotham controlled its decision in Miles even though DOHSA did not directly apply. That opinion first acknowledged that, unlike the statutory language in DOHSA, neither the Jones Act nor FELA made explicit the "pecuniary loss" limitation. The Court concluded, however, that the limitation applied, as per Vreeland . The Court therefore squarely held that the recovery of the deceased seaman;' survivors under the Jones Act is limited to pecuniary losses.
*1327 The Miles Court then turned to the issue in that case as to the scope of the survivor's recovery for unseaworthiness under the general maritime law. As the Court explained, "our place in the constitutional scheme does not permit us to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seamen." id. at 32-33, 111 S.Ct. 317. Thus, Miles established "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act or the general maritime law." Id. at 33, 111 S.Ct. 317.
Most significantly here, the Court did not limit its holding to claims under the Jones Act. Rather, the Court held that the damages available under the general maritime law cause of action for wrongful death-which cause of action the Court recognized for the first time in Miles -were likewise limited to recovery of pecuniary losses. It follows from Miles that the same result flows when a general maritime law personal injury claim is joined with a Jones Act claim as well as a DOHSA claim. So Miles's conclusion applies with equal force here: regardless of opposing policy arguments, "Congress has struck the balance for us" in determining the scope of damages. This means that Plaintiff's claims here are similarly limited to pecuniary losses, which thus means that no punitive damages are recoverable.
Some have argued that the decision of the Supreme Court in Atlantic Sounding Co. v. Townsend overrules or severely undermines Miles, thus leaving the door open to applying punitive damages in cases like ours. 557 U.S. 404, 411, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009) ("[P]unitive damages have long been available at common law ... [and] the common-law tradition of punitive damages extends to maritime claims."). But instead of overruling Miles , Atlantic Sounding carefully distinguished its facts from Miles and reaffirmed that Miles is still good law.
The Court in Atlantic Sounding considered a seaman's claim for punitive damages for the willful failure to pay maintenance and cure. In distinguishing its maintenance and cure case from Miles's wrongful death action, the Court recognized that "a seaman's action for maintenance and cure is 'independent' and 'cumulative' from other claims such as negligence and that the maintenance and cure right is 'in no sense inconsistent with, or an alternative of, the right to recover compensatory damages [under the Jones Act]." Id. at 423, 129 S.Ct. 2561. The Court agreed that "both the Jones Act and the unseaworthiness remedies are additional to maintenance and cure: the seaman may have maintenance and cure and also one of the other two." Id. at 424, 129 S.Ct. 2561. Unlike the seaman's remedy for damages based on negligence and unseaworthiness, "the Jones Act does not address maintenance and cure or its remedy." Id. at 420, 129 S.Ct. 2561. Thus, in contrast to the action for damages based on unseaworthiness, in an action for maintenance and cure it is "possible to adhere to the traditional understanding of maritime actions and remedies without abridging or violating the Jones Act; unlike wrongful-death actions, this traditional understanding is not a matter to which 'Congress has spoken directly.' " Id. at 420-21, 129 S.Ct. 2561.
So it follows that Atlantic Sounding expressly adopted Miles's reasoning by recognizing that "Congress' judgment must control the availability of remedies for wrongful-death actions *1328 brought under general maritime law." Id. at 419, 129 S.Ct. 2561. The Court could not have been clearer in signaling its approval of Miles when it added: "The reasoning of Miles remains sound." Id. at 420, 129 S.Ct. 2561. Hence, any argument that Atlantic Sounding revitalizes a punitive damage claim under the Jones Act or DOHSA, notwithstanding these statutes' text, historical context and consistent application, holds no credible weight.[10]
In sum, any claim for punitive damages in the pending complaint should be STRICKEN as a matter of law because DOHSA applies to this wrongful death action and the statute limits the available remedies to compensatory damages.
(b) Alternatively, punitive damages are not plausible from this complaint
Plaintiff's claim is barred by Eleventh Circuit precedent even if DOHSA does not apply (or if it unexpectedly allows for a punitive award now). Maritime law precedents holds that punitive damages, when available, arise only "in those very rare situations of intentional wrongdoing." In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. On Sept. 22, 1993 , 121 F.3d 1421, 1429 (11th Cir. 1997) ("Unless or until the United States Supreme Court should decide to add state remedies to the admiralty remedies for personal injury, personal injury claimants have no claim for nonpecuniary damages such as ... punitive damages, except in exceptional circumstances such as ... those very rare situations of intentional wrongdoing."). Additionally, "punitive damages may be awarded in maritime tort actions where defendant's actions were intentional, deliberate or so wanton and reckless as to demonstrate a conscious disregard of the rights of others." Markham v. Carnival Corp. , 2012 WL 12866787, at *5 (S.D. Fla. Dec. 3, 2012) (quoting Muratore v. M/S Scotia Prince , 845 F.2d 347, 354 (1st Cir. 1988) ).
Plaintiff wrongly argues that the "intentional wrongdoing" rule from Amtrak was abrogated by the Supreme Court in Atlantic Sounding. , 557 U.S. at 404, 129 S.Ct. 2561. Again, a closer reading of the opinion shows otherwise. In Atlantic Sounding , the Supreme Court stated that punitive damages at common law have historically extended to claims arising under federal maritime law. Id. at 419, 129 S.Ct. 2561. Following Atlantic Sounding , Plaintiff concludes that one would not be required to prove intentional misconduct to claim *1329 punitive damages. But Plaintiff has read Atlantic Sounding far too broadly and Amtrak too narrowly. Amtrak did not entirely foreclose punitive damages in maritime claims; rather "the Eleventh Circuit concluded that they were only available in exceptional circumstances such as those very rare situations of intentional misconduct." Crusan v. Carnival Corp. , 2015 WL 13743473, at *7 (S.D. Fla. Feb. 24, 2015) (quoting Amtrak , 121 F.3d at 1429 ). And in Atlantic Sounding , the Supreme Court only addressed whether punitive damages were available as a remedy for a breach of the maritime duty of maintenance and cure. Atlantic Sounding , 557 U.S. at 408, 129 S.Ct. 2561. But, that holding is not inconsistent with Amtrak because the Eleventh Circuit explicitly held that punitive damages were allowable for the "willful failure to furnish maintenance and cure to a seaman." Crusan , 2015 WL 13743473, at *7 (quoting Amtrak , 121 F.3d at 1429 ).
Persuasive guidance is found in Crusan , where our court addressed this issue and discussed why Atlantic Sounding did not abrogate the Eleventh Circuit in Amtrak :
The real issue, it appears, is not whether punitive damages are available under general maritime law, they are, but what standard of liability should apply in determining whether punitive damages may be recovered for a particular maritime claim. An overly broad reading of Atlantic Sounding would make punitive damages available even in the absence of a showing of intentional misconduct. However, the Court believes that Atlantic Sounding's statement that "[p]unitive damages have long been an available remedy at common law for wanton, willful or outrageous conduct" was simply a general description of the circumstances in which such damages are available at common law, and was not intended to announce a bright-line standard of liability governing recovery of punitive damages in all maritime tort claims. Again, the Court notes that Atlantic Sounding addressed only the availability of punitive damages in a cause of action for maintenance and cure, and did not specifically discuss personal injury claims brought by ship passengers. Given the relatively narrow scope of the issues presented in Atlantic Sounding, the Court does not believe that holding should be read so broadly as to find it in conflict with Amtrak. Therefore, the Court finds that Amtrak is controlling on this issue, and Plaintiffs in this action may recover punitive damages only upon a showing of intentional misconduct.
Crusan , 2015 WL 13743473, at *7 (citations omitted). We agree with the reasoning in Crusan and hold that Plaintiff must plausibly allege a factual basis for intentional misconduct in order to recover punitive damages from Defendant.
To demonstrate intentional misconduct, the plaintiff must show "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct." Mee Industries v. Dow Chemical Co. , 608 F.3d 1202, 1220 (11th Cir. 2010) (quoting Fla.Stat. § 768.72(2) (2005) ). Plaintiff's amended complaint does not even come close. It wholly fails to allege intentional misconduct on the part of Defendant and resorts, instead, to a straightforward gross negligence theory: "Defendant intentionally chose to promote the use of the water inflatables without warning guests of the dangers associated with the excursion." [D.E. 48]. Adding the word "intentionally" to that allegation is useless because the wrongful act is still at its core a lack of warning. There is nothing *1330 extraordinary about "intentionally promoting" or "intentionally using" water inflatables. And neither act can be deemed "misconduct." What can be negligent conduct is the failure to warn of a dangerous condition or a troubled excursion operator. That is all that this complaint alleges. So, in other words, Plaintiff's entire liability theory is a negligent failure to warn. That is clearly not sufficient under Amtrak and DOHSA to support a punitive damage claim.
Intentional or grossly reckless conduct in this circumstance would be a claim that an employee on the vessel sabotaged the inflatable. Or a claim that the shore operator told Defendant that it used inflatables that were known to fail. Or a claim that an employee of the vessel intentionally pushed the Plaintiff onto the inflatable when he knew it was not yet safe to do so. Something, anything, that would come close to an "exceptional circumstance" or "intentional misconduct." Clearly Amtrak and DOHSA do not envision punitive damages arising from traditionally negligent conduct, like failures to warn or failures to supervise excursion operators.
Accordingly, Defendant's motion to dismiss the complaint, in so far as it includes a claim for punitive damages in this case, must be GRANTED and the references to punitive damages should be STRICKEN with prejudice.
C. Count I - Negligence
Turning then to other substantive arguments in the motion, in our initial R & R on Defendant's motion to dismiss Plaintiff's complaint, we found that Plaintiff's original complaint failed to allege any supporting facts showing that Defendant had notice as to the dangerous condition giving rise to their duty to warn, and imposed heightened duties on Defendant beyond the duty to warn. [D.E. 33]. We also found that Plaintiff's initial claim for negligent hiring or selection was insufficiently pled and recommended that the count be dismissed. The District Judge adopted the R & R and entered an Order of dismissal over Plaintiff's objections. [D.E. 34, 35].
Plaintiff's amended complaint, filed in response to the R & R and the dismissal Order, asserted revised negligence claims in four counts, three of which related to liability against Carnival. Defendant, however, has once again moved to dismiss those counts on the grounds that the complaint still fails to adequately allege notice against Carnival to give rise to liability, that it fails because the condition was open and obvious as a matter of law, and that it effectively seeks to heighten the standard of care against Carnival in derogation of maritime law principles.
In assessing these revised claims, we begin with the rule that, to state a negligence claim, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1336 (11th Cir. 2012). "In a claim based on an alleged tort occurring at an offshore location during the course of a cruise, federal maritime law applies, just as it would for torts occurring on ships sailing in navigable waters." Aronson v. Celebrity Cruises , Inc. , 30 F. Supp. 3d 1379, 1392 (S.D. Fla. 2014).
The reasonable care under the circumstances standard, as a prerequisite to imposing liability, also requires that the ship owner have had actual or constructive notice of the risk-creating condition, at least where the risk is one just as commonly encountered on land (and not clearly *1331 linked to nautical adventure). See Keefe v. Bahama Cruise Line, Inc. , 867 F.2d 1318, 1322 (11th Cir. 1989). Once a passenger leaves the ship, a cruise ship operator "only owes its passengers a duty to warn of known dangers in places where passengers are invited or reasonably expected to visit." Moseley v. Carnival Corp. , 2013 WL 5913833, at *3 (S.D. Fla. Oct. 31, 2013) (citing Carlisle v. Ulysses Line Ltd., S.A. , 475 So. 2d 248, 251 (Fla. 3d DCA 1985) ); see also Chaparro , 693 F.3d at 1336 (recognizing that the rule from Carlisle is "consonant with the federal maritime standard of 'ordinary reasonable care under the circumstances' "); Aronson , 30 F. Supp. 3d at 1395 ("Thus, where cruise ship passengers are invitees or expected visitors at offshore locations, a ship operator's duty of care is limited to the duty to warn.").
1. Whether Notice is Sufficiently Alleged
Turning first to the notice issue raised in the pending motion, Defendant maintains that Plaintiff's negligence claim should be dismissed because Plaintiff failed to properly allege notice of the unsafe condition. Plaintiff argues, however, that Defendant knew or should have known of the potentially unsafe conditions, and that Defendant's continuous participation with the Excursion Entity confirms its awareness of the risks involved in the excursion. Plaintiff claims that: (1) Defendant directly profited from the shore excursion, (2) Defendant made representations that it regularly oversees, monitors, tracks, and inspects the operations of its tour operators, (3) Defendant knew or should have known, based on inspections, of the possible dangers associated with the water inflatables and changing tides, (4) the Decedent relied on Defendant's representations and participated in the shore excursion, and that (5) the Decedent was injured during the excursion and died as a result.
We conclude that these pleaded facts adequately establish a claim for negligence based on a failure to warn. See Chaparro , 693 F.3d at 1337. The Eleventh Circuit, in Wolf v. Celebrity Cruises, Inc. , 683 F. App'x 786, 793-94 (11th Cir. 2017), established the standard that courts apply in determining the first element of negligence, which is whether a defendant has a duty to warn:
The existence of a duty is a question of law. A shipowner generally owes to its passengers a duty to exercise reasonable care under the circumstances. This includes a duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit. But the duty to warn encompasses only dangers of which the carrier knows, or reasonable should have known. Accordingly, as a prerequisite to imposing liability, a carrier must have had actual or constructive notice of the risk-creating condition.
Specifically, Plaintiff's allegation that Defendant should have been aware of the risk-creating condition during inspections of the excursion is sufficient to provide actual or constructive notice of the risk-creating condition. Its sufficiency is based on the plausibility of the allegation and how the alleged facts raise a reasonable expectation that discovery could provide additional proof of Defendant's liability. See Chaparro , 693 F.3d at 1337 (reversing the district court and finding failure to warn adequately pleaded where the plaintiff alleged that Carnival knew or should have known of these dangers because Carnival monitors crime in its ports of call."); Heller v. Carnival Corporation , 191 F. Supp. 3d 1352, 1358 (S.D. Fla. 2016) (holding *1332 that Carnival's inspections made or should have made them aware of the risk-creating condition.).
Yet Defendant argues that Plaintiff failed to adequately plead a duty to warn claim, and relies on Gayou v. Celebrity Cruises, Inc. , 2012 WL 2049431 (S.D. Fla. June 5, 2012) and Koens v. Royal Caribbean Cruises, Ltd. , 774 F. Supp. 2d 1215 (S.D. Fla. 2011), for support. Gayou is distinguishable, however, because the plaintiff in that case failed to allege "any facts from which it may be inferred that Celebrity either knew or should have known of any dangerous or unsafe condition." Gayou , 2012 WL 2049431, at *5. Here, Plaintiff alleges that Defendant knew or should have known of the condition based on Defendant's inspections. And this factual allegation is "similar to the allegation found sufficient by the Eleventh Circuit in Chaparro , decided after Gayou ." Heller , 191 F. Supp. 3d at 1359 (citation omitted).
Defendant's reliance on Koens is equally unavailing for similar reasons. Id. In Koens , a group of cruise passengers on an excursion were robbed at gunpoint. The court held that the plaintiff's allegation of "actual knowledge of crimes against tourists in Nassau" was insufficient to trigger a duty. id. In this case, Plaintiff's allegations are more in line with Chaparro because Plaintiff pleaded her claim with greater specificity.[11] That is, in both this case and Chaparro , the plaintiffs sufficiently alleged that the defendant had actual notice of the dangerous condition through their familiarity with the excursions through their sales relationship, inspections, and continued partnership. We have to assume those facts are true for purposes of this motion. Therefore, we conclude that Plaintiff has alleged sufficient notice, at least on a failure to warn theory. See, e.g., McLaren v. Celebrity Cruises, Inc. , 2012 WL 1792632, at *9 (S.D. Fla. May 16, 2012) ("[Plaintiff] alleges that Celebrity owed a duty to warn based upon its knowledge of a dangerous condition specific to both the excursion involved and the place of the accident.") (denying motion to dismiss).
2. Whether the danger was open and obvious
Assuming the notice argument fails, Defendant falls back on the argument that the dangers involved from the changing tides and shallowing of the water depth are sufficiently open and obvious so as not to trigger a duty to warn. So, Defendant, maintains, no liability can attach based on the allegations in this complaint.
Generally, a defendant only has a duty to warn of dangers that are not open and obvious. See Isbell v. Carnival Corp. , 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) (quoting Luby v. Carnival Cruise Lines, Inc. , 633 F. Supp. 40, 41 (S.D. Fla. 1986) ). Whether a danger is *1333 open and obvious is guided by a reasonable person standard. See Horne v. Carnival Corporation , 741 F. App'x 607, 608 (11th Cir. 2018) (citations omitted). But, depending on the facts of a case, it could be negligent for failing to warn a passenger not to dive into certain waters. See Belik v. Carlson Travel Group, Inc. , 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011). Courts have held that it is in the purview of the jury to determine whether a defendant breached his duty of care.
For example, in First Arlington Inv. Corp. v. McGuire , 311 So. 2d 146, 151 (Fla. 2d DCA 1975), the court determined that the trial court was correct in allowing the question of whether the defendants were negligent for failing to warn the plaintiff not to dive off a pier:
From the circumstances shown by this record it was for the jury's determination as to whether or not the appellants' [sic] were negligent for their failure to warn appellee not to use the pier for a purpose (diving) other than the admittedly intended purpose. It was also within the province of the jury to determine whether the proximate cause of appellee's injuries was his own negligence or carelessness.
id.
In McGuire , the court held that there was sufficient evidence for a jury to determine whether or not the defendants knew or were aware of the fact that the pier was being used for diving purposes both before and after the accident involving the plaintiff, and that they were aware of the dangerous condition. id. Along those same lines, our court in Belik followed the rationale in McGuire because the plaintiff there alleged that the defendant had encouraged him to jump off a seawall. The plaintiff's assumption, that "if the plaintiff was encouraged to jump off the wall into water of indeterminate depth, that the water was deep enough to dive safely," was deemed reasonable. Belik , 864 F. Supp. 2d at 1309. The court further held that the reasonable assumption created a fact question of whether the danger was open or obvious. id.
Here, Plaintiff raises a similar assumption: that if the Decedent was encouraged by Defendant to use the water inflatables "for purposes of jumping and/or diving into the water below," that the water was deep enough to dive safely. [D.E. 38]. A reasonable and plausible case can thus be made that a fact question exists whether the danger was open or obvious. Dismissal as a matter of law is not possible under these circumstances.
We add that, even if a danger is open and obvious, this is still not a total bar to recovery. See Belik , 864 F. Supp. 2d at 1309 (citing Kendrick v. Ed's Beach Serv., Inc. , 577 So. 2d 936, 938 (Fla. 1991) ("Even when a person engaging in a noncontact sport such as diving knows of an open and obvious danger, the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven.")). So based on Plaintiff's reasonable assumption and the relevant case law, the Court cannot determine at this time whether the danger was open or obvious or otherwise foreclose the possibility that a jury may deem this issue to be a reason to reduce, not foreclose, Plaintiff's recovery.
3. Whether heightened duties of care are imposed on Defendant
In Count I of her amended complaint, Plaintiff alleges that Defendant breached twenty-six duties of care with nineteen premised on the failure to warn. The failure to warn allegations include Defendant's failure to warn the Decedent of the dangers associated with the excursion *1334 such as possible injuries, lack of lifeguards or proper medical care, changing tide, use of water inflatables in a shallow area, and lack of oversight over the excursion. Plaintiff's allegations are worrisome because Plaintiff includes many of the same allegations that the Court previously found to be inapplicable - including the failure to (1) provide a safe excursion, (2) provide an excursion with proper and safe equipment and personnel, and (3) adequately oversee the excursion operations. [D.E. 33]. Plaintiff attempts to remedy these allegations by adding "and failure to warn of same" at the end of each statement.
But, Plaintiff cannot hold Defendant liable for many of these alleged breaches because they are not premised on a duty to warn. To hold otherwise "would effectively render cruise line operators like [Defendant] the all-purpose insurers of their passengers' safety." Thompson v. Carnival Corp. , 174 F. Supp. 3d 1327, 1342 (S.D. Fla. 2016) (citing Kornberg v. Carnival Cruise Lines, Inc. , 741 F.2d 1332, 1334 (11th Cir. 1984) ; Weiner v. Carnival Cruise Lines , 2012 WL 5199604, at *2 (S.D. Fla. Oct. 22, 2012) ; Joseph v. Carnival Corp. , 2011 WL 3022555, at *1 (S.D. Fla. July 22, 2011) ("A cruise ship owner or operator ... is not an insurer of its passengers' safety.")).
In any event, Plaintiff has presented sufficient allegations to establish a claim for negligence even though some of the allegations are misplaced. See Heller v. Carnival Corp. , 191 F. Supp. 3d at 1358-60 (denying motion to dismiss on similar grounds). Accordingly, we conclude that count I states a claim for negligence even though it may include duties are not actionable under maritime law and therefore Defendant's motion to dismiss Plaintiff's negligence claim should be DENIED . The duty to warn issues that will be presented at trial may be narrowed or adjudicated by summary judgment. See, e.g., Wolf, 683 F. App'x at 794-98 (affirming summary judgment where record lacked evidence of inadequate inspections or actual knowledge of excursion's deficiencies gained from such inspections). We need not address those issues now. It suffices to say that the amended complaint includes sufficient plausible allegations of negligence, on a failure to warn theory. We note, of course, that such negligence must also only be measured against the standard of liability required by DOHSA, because any state law or common law maritime principles are preempted by that statute. With that caveat, we find that this Count as alleged survives dismissal and warrants further consideration, but with specific exceptions that we now turn to.
4. Plaintiff's claim for negligent selection and hiring fails
Count I must, however, still be dismissed in part based on the inclusion of a negligent selection or hiring claim. To state a claim for negligent selection or hiring under Florida law, Plaintiff must allege (1) that an employee or independent contractor (like an excursion entity) was incompetent or unfit to perform the work provided; (2) that Defendant knew reasonably should have known of the particular incompetence or unfitness; and (3) that the competence or unfitness proximately caused the injuries. See Smolnikar v. Royal Caribbean Cruises, Ltd. , 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011). To meet the second element, a plaintiff must allege sufficient facts showing that the employer was on notice of the harmful propensities of the person hired or retained. See Witover v. Celebrity Cruises, Inc. , 161 F. Supp. 3d 1139, 1148 (S.D. Fla. 2016).
Negligent hiring occurs, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue *1335 of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." Mumford v. Carnival Corp. , 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (citations omitted); see also Gharfeh v. Carnival Corp. , 2018 WL 501270, at *10 (S.D. Fla. Jan. 22, 2018) (holding that plaintiff sufficiently pleaded a negligent hiring claim when plaintiff alleged that Carnival knew or should have known to investigate prior to hiring an employee, whose credentials, training, and experience were inadequate for the position).
Here, Plaintiff fails to allege a claim for negligent hiring. Plaintiff's allegation that the Excursion Entity was unfit and incompetent to provide the excursion prior to being hired by Defendant is conclusory and unsupported by any factual allegations. See Gayou , 2012 WL 2049431, at *5 (dismissing plaintiff's claim because the elements of negligent hiring or retention were not supported by any relevant facts); Ferretti v. NCL (Bahamas) Ltd. , 2018 WL 1449201, *4 (S.D. Fla. 2018) (same). Plaintiff also provides no factual support as to the allegation that Defendant failed to properly investigate the Excursion Entity before hiring it. That is, Plaintiff fails to allege any improper or unsafe conduct on the part of the Excursion Entity, prior to being hired by Defendant, that would have put Defendant on notice of any alleged lack of fitness.
For a negligent retention or selection claim, the employer must be charged with knowledge of the employee or independent contractor's unfitness after they are hired. See Witover , 161 F. Supp. 3d at 1148 ("Liability for negligent retention occurs after employment begins, where the employer knows or should have known of the employee's unfitness, and fails to take further action such as investigating, discharge or reassignment") (citing Franza v. Royal Caribbean Cruises, Ltd. , 948 F. Supp. 2d 1327, 1334 (S.D. Fla. 2013) (quoting Malicki v. Doe , 814 So. 2d 347, 362 n.15 (Fla. 2002) ).
We find that the allegations on Defendant's actual or constructive knowledge of the Excursion Entity's incompetence or unfitness after being hired are little more than boilerplate and entirely conclusory. See Brown v. Carnival Corp. , 215 F. Supp. 3d 1312, 1317 (S.D. Fla. 2016) (holding that Plaintiff's allegation that defendant had knowledge of incompetence and unfitness since defendant's representatives participated in the excursion and conducted site inspections aboard the vessel were boilerplate.). Plaintiff's amended complaint fails to identify plausible facts as to the Excursion Entity's incompetence or unfitness. Instead, the allegations center on the Excursion Entity's fitness based on the conditions surrounding the day of the Decedent's death. In other words, the amended complaint lacks any factual support that the Excursion Entity was unfit or incompetent prior to the day of the Decedent's death.
Moreover, as Judge Ungaro's decision in Brown explains, there is a difference between sufficient notice to trigger a duty to warn about specific dangers related to an excursion, versus the more tangible evidence necessary to sustain a negligent retention theory. Simply having participated in site inspections of the excursion operator, as the complaint alleged in Brown, is not enough. Id. at 1317 (denying motion to dismiss duty to warn claim based upon knowledge gained in site inspections of snorkeling tour operator but granting motion on negligent hiring/retention claim). Our case presents the same situation. We have, in the light most favorable to Plaintiff, enough to sustain the duty to warn claim. But that same factual allegation related to past inspections is the *1336 only thing standing between the negligent hiring/retention claim and dismissal. Because of the differences in the two types of claims, we agree with Judge Ungaro and conclude that it is not sufficient to survive Rule 12(b)(6) dismissal.
Therefore, Plaintiff's claim for negligent selection or hiring, incorporated within the scope of the negligence claim in Count I, cannot stand. As such, Defendant's motion to dismiss Plaintiff's negligent hiring or selection claim included in Count I should be GRANTED with prejudice .
In sum, the motion should be GRANTED in part and DENIED in part as to Count I.
D. Count III does not Warrant Dismissal
Defendant argues that Count III should be dismissed because 1) apparent agency or agency by estoppel are not independent causes of action; 2) Plaintiff's passenger ticket, shore excursion ticket, and Defendant's website preclude her claim as a matter of law; and 3) the underlying negligence claim is defective. In contrast to the initial complaint, Plaintiff's amended complaint sufficiently pleads a negligence by agency claim. We will focus this analysis on whether apparent agency or agency by estoppel must be independent causes of action, and whether Plaintiff's claim is precluded based on the tickets and website.
There is no cause of action for apparent agency or agency by estoppel because they are merely legal theories. [D.E. 33]; see also Barabe v. Apax Partners Europe Managers, Ltd. , 359 F. App'x 82, 84 (11th Cir. 2009). As Plaintiff notes in her response to Defendant's motion, Count III is based on an alternative theory supporting her negligence count, that Defendant is liable for the Excursion Entity's negligence because it held that company out as its agent. We find no good cause to dismiss Count III on this basis alone. Like other courts in our district, instead of recommending a dismissal, we will construe Count III under this alternative theory of negligence. See, e.g., Gayou v. Celebrity Cruises, Inc. , 2012 WL 2049431, at *8 (S.D. Fla. June 5, 2012). And as such the allegations of notice relating to the dangers involved in the excursion's operations are sufficient to withstand dismissal. See also Brown, 215 F. Supp. 3d at 1318.
Under federal maritime law, a defendant can be vicariously liable for the actions of its apparent agents. See Smolnikar , 787 F. Supp. 2d at 1324 (citing Archer v. Trans/Am. Servs. Ltd. , 834 F.2d 1570, 1573 (11th Cir. 1988) ). Apparent agency is established when: 1) the alleged principal causes, through some manifestation, a third party to believe an alleged agent has authority to act for the benefit of the principal; 2) such belief is reasonable; and 3) the third party reasonably acts on such believe to her detriment. See id.
Defendant argues that the shore excursion ticket, passenger ticket, and their website preclude Plaintiff from sufficiently pleading the second element of apparent agency. Defendant claims that the documents put Plaintiff on notice that the Excursion Entity was an independent contractor, and that Defendant neither supervises or control the actions of the independent contractors. Under Defendant's argument, the documents would then make Plaintiff's belief unreasonable, and bar her from meeting all of the elements.
Generally, courts do not consider anything beyond the face of the complaint and documents attached thereto when ruling on a motion to dismiss. However, there is an exception where: 1) a plaintiff refers to a document in the complaint; 2) the document is central to its claim; 3) the *1337 document's contents are not in dispute; and 4) the defendant attached the document to its motion to dismiss. See Financial Sec. Assurance, Inc. v. Stephens, Inc. , 500 F.3d 1276, 1284 (11th Cir. 2007).
Defendant cites Wajnstat v. Oceania Cruises, Inc. , 2011 WL 465340 (S.D. Fla. Feb. 4, 2011) and Hajtman v. NCL (Bahamas) Ltd. , 526 F. Supp. 2d 1324, 1328 (S.D. Fla. 2007), as support for the contention that Plaintiff's alleged belief in the existence of an agency relationship is unreasonable as a matter of law based on the ticket and website language. However, both cases were abrogated by Franza v. Royal Caribbean Cruises, Ltd. , 772 F.3d 1225 (11th Cir. 2014) because of their reliance on Barbetta v. S/S Bermuda Star , 848 F.2d 1364, 1369 (5th Cir. 1988),[12] and both cases fail to analyze whether the tickets were central to the plaintiff's claim.
In our R & R, we declined to consider the shore ticket because the document was "not central to [Plaintiff's] claim" because it is a "claim sounding in tort rather than contract." Heller v. Carnival Corp. , 191 F. Supp. 3d at 1361 n.9 (citing Gentry v. Carnival Corp. , 2011 WL 4737062, at *5 (S.D. Fla. Oct. 5, 2011) ); [D.E. 33]. We reach the same conclusion as to the passenger ticket because, like the shore excursion ticket, Plaintiff merely references it in passing. Additionally, even though Plaintiff references the website throughout her amended complaint, the document is not central to her claim as it is based in tort rather than contract. Therefore, Defendant's preclusion argument is unavailing.
In contrast with Plaintiff's initial complaint, her amended complaint provides enough factual allegations to sustain a duty to warn theory of liability. Plaintiff amended complaint also sufficiently establishes a claim for apparent agency. Accordingly, we find Defendant's arguments unpersuasive on a motion to dismiss.[13] Defendant's motion to dismiss Plaintiff's Count III should be DENIED.
IV. CONCLUSION
For the foregoing reasons, the Court RECOMMENDS that Defendant's motion to dismiss [D.E. 40] be GRANTED in part and DENIED in part :
A. Defendant's motion to dismiss Plaintiff's negligence claim should be DENIED but subject to DOHSA standards of liability.
B. Defendant's motion to dismiss Plaintiff's negligent hiring and selection claim should be GRANTED .
C. Defendant's motion to dismiss Plaintiff's apparent agency or agency by estoppel claim should be DENIED .
D. Defendant's motion to dismiss/strike Plaintiff's non-pecuniary damages should be GRANTED with prejudice .
E. Defendant's motion to dismiss/strike Plaintiff's request for punitive damages should be GRANTED with prejudice.
F. Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation *1338 within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1) ; 11th Cir. Rule 3-1 ; see, e.g., Patton v. Rowell, 678 Fed.Appx. 898 (11th Cir. 2017) ; Cooley v. Commissioner of Social Security, 671 Fed.Appx. 767 (11th Cir. 2016).
DONE AND SUBMITTED in Chambers at Miami, Florida, this 6th day of March, 2019.

On September 6, 2018, Judge Williams referred Carnival's motion to dismiss to the undersigned Magistrate Judge for disposition. [D.E. 41].

Count II is a negligence/gross negligence claim against the Excursion Entity.

In Bonner v. City of Prichard , 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The assigned case number for Plaintiff's Florida probate action is 2018-004332-CP-02.

In 1988, President Reagan issued Proclamation No. 5928. The Proclamation moved the starting point of DOHSA from three to twelve nautical miles offshore.

However, that holding was restricted to the application of admiralty jurisdiction to "aviation tort claims arising from flights by land-based aircraft between points within the continental United States where the aircraft was fortuitously and incidentally connected to navigable waters." Executive Jet Aviation , 409 U.S. at 274 & n.26, 93 S.Ct. 493.

See generally M. Burke, The 1920 Death on the High Seas Act: An Outdated and Ambiguous Admiralty Law Shielding Cruise Line Companies from Civil Liabilities, 49 J. Mar. L. & Com. 1, 3-4 (2018) ("Shortly after the ruling of The Harrisburg, the Maritime Law Association was founded in 1899. The purpose of this association was to draft a bill 'that would create a wrongful death right of action in admiralty.' The primary issue that arose was whether or not to include all navigable waters, which would then take precedence over state statutes and their boundaries.").

46 U.S.C. § 762, amended by Pub. L. 109-394, § 6(c), 120 Stat. 1511 (2006) (deleting "and just" from compensation as being redundant).

Notably, at times former Fifth Circuit or Eleventh Circuit panels have permitted awards in DOHSA cases that extended beyond this narrow pecuniary loss standard, as Solomon itself illustrated. id. at 792 (affirming award for pain and suffering damages for decedent under Florida wrongful death statute that supplemented damages awarded under DOHSA). Subsequent Supreme Court precedents, however, reversed or impliedly abrogated these holdings. See, e.g., In re Korean Air Lines Disaster of Sept. 1, 1983, 117 F.3d 1477, 1481 (D.C. Cir. 1997) (rejecting view of former Fifth Circuit that DOHSA remedies could be supplemented by general maritime law or state survival statutes), aff'd sub nom. Dooley v. Korean Air Lines Co. , 524 U.S. 116, 118 S.Ct. 1890, 141 L.Ed.2d 102 (1998) ; Gray v. Lockheed Aeronautical Sys. Co. , 125 F.3d 1371, 1381-83 (11th Cir. 1997) (disagreeing with D.C. Circuit's decision in Dooley and affirming award of pain and suffering damages for decedent in DOHSA action; "We are also unpersuaded that Congress intended to make an indirect statement precluding the recognition of a general maritime law survival action remedy."), judgment vacated, 524 U.S. 924, 118 S.Ct. 2317, 141 L.Ed.2d 692 (1998) (remanding case following Supreme Court's decision in Dooley ).

Of course, we add that even if Atlantic Sounding did limit the relevance of the decision in Miles, the holding of that case had nothing to do with DOHSA itself. Nothing in the opinion suggests that courts interpreting DOHSA should abandon traditional tools of statutory construction in deriving a punitive damage award notwithstanding the express limitations found in section 30303. Moreover, the law governing a maintenance and cure claim stands on very different footing from the law that should govern indemnity or negligence claims such as those governed by DOHSA or the Jones Act. A maintenance and cure claim at issue in Atlantic Sounding "does not rest upon negligence or culpability on the part of the owner or master, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness." Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993 (1938) (citations omitted). And, "[i]t is not an award of compensation for the disability suffered." Id. at 528, 58 S.Ct. 651. Instead, it is an obligation of support running from the vessel owner to the seaman whenever the mariner is hurt or becomes ill, whatever its cause. Hence the remedies for indemnity or negligence claims like DOHSA or Jones Act claims should be governed by the principles of deference to congressional policy decisions and uniformity in maritime law that were outlined in Miles, Higginbotham , and Moragne, rather than the unique attributes of maintenance and cure addressed in Atlantic Sounding. Punitive damages are thus not available in the former, whereas they are in the latter.

We are mindful of Defendant's argument that the greater specificity here is comprised of only one or two additional paragraphs that, in fairness, could still be deemed too conclusory to cure the deficiencies cited in our first R & R. But we must also remember that we have not, at least not yet, abandoned the concept of notice pleading altogether. As the Supreme Court pointed out, "the pleading standard Rule 8 announced does not require detailed factual allegations" so long as they "raise a reasonable expectation that discover will reveal evidence" to support what is alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ; Twombly, 550 U.S. at 556, 570, 127 S.Ct. 1955. So even though the new allegations in the amended complaint are not replete with factual support, they are enough to push the ball past the metaphorical Rule 12(b)(6) goal line. Our original R & R was presented with nothing at all to hang its hat on; now we at least have enough to find that a plausible theory of liability has now been attained.

Barbetta held that cruise lines were not vicariously liable for their medical staff as a matter of law. 848 F.2d at 1369. This case does not apply here.

We note as well that Carnival again focuses on the Eleventh Circuit's decision in Wolf , 683 F. App'x at 786, to argue that the ticket contract is essential to Plaintiff's claims. But, as we explained earlier, Wolf is unavailing at this stage because the disposition of that case followed summary judgment review of a complete record.